366 So.2d 96 (1979)
Lyman WALKER, III, Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. II-103.
District Court of Appeal of Florida, First District.
January 4, 1979.
Rehearing Denied January 30, 1979.
*97 Jon D. Caminez, Tallahassee, for appellant.
Alan E. DeSerio and Phil S. Bennett, Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from the final agency action ordering removal of petitioner's three outdoor advertising signs located on Interstate Highway 75. The Department of Transportation [DOT], rejecting the recommendation of the hearing examiner, has ordered removal of the signs worth an estimated $15,000 for failure of appellant to timely renew sign permits by payment of the annual fee for 1976 in the amount of $31.00.[1] Subsequent to its refusal to accept payment for the 1976 permits, payment for subsequent years attempted to be made by appellant Walker was also rejected.
Appellant has been selling pecans along the roadside and maintaining signs advertising that fact for more than 20 years.[2] The three signs in question, located in Hamilton County, were each erected prior to December 8, 1971, and, since located within 660 feet of the nearest edge of the I-75 right-of-way, come within the purview of the Federal Highway Beautification Act, also known as the "Ladybird Act."[3] Owners of signs lawfully erected and in existence on December 8, 1971, are entitled to full compensation under the federal and Florida statutes if and when a sign is removed under the Federal Beautification Program.[4]
The instant case is one of a number of cases presently before this Court involving the disputed use by DOT of the police power to remove, on the grounds of late payment of fees, signs which would otherwise require compensation under the Federal Highway Beautification Program.[5]
The facts of this case are that on January 10, 1975, appellant paid, and DOT accepted, permit fees due on the three signs in question for the years 1972, 1973 and 1974. Payment was made to Mr. Glass, one of DOT's field representatives, who as was customary in the rural areas, came to collect *98 the permit fees. On payment of his fees, appellant was given a current permit for those years and a permanent metal tag[6] which he affixed to each of his signs. Thereafter, appellant Walker moved to south Florida to seek work raising watermelons while his family remained in his Lamont, Florida, home. Fees for the year 1976 were not paid. On Walker's return to north Florida in November of 1976, he attempted to pay all fees due including those for the year 1977. The application and fees were rejected by the DOT as to the three signs on I-75. Late renewal fees for Walker's other signs, not affected by the Ladybird Act, were accepted.
In January of 1977, Walker filed a petition for writ of mandamus in the Circuit Court, Leon County, seeking to require the Department to accept fees and issue permits on the three signs in question. The court found that Walker had not received proper notice, and directed that the Department give notice and afford him the right to a hearing prior to the "revocation" of the permits.[7]
The sufficiency of the notices sent to Walker and the claimed right of the Department to summarily cut down signs if the owner had not timely paid a renewal fee, were issues litigated in the mandamus proceeding and resolved contrary to the Department's contention. No appeal was taken from that proceeding.
Pursuant to that writ, DOT on March 21, 1977, sent Walker a printed "form" notice listing the three signs. Typed on the printed form at the bottom of the "Violations" section was the following: "FAILURE TO RENEW PERMIT TAGS ABOVE LISTED SIGNS MUST BE REMOVED" and then follows the printed portion of the notice stating:
"That unless the applicable provisions of said Chapter 479, Sections 335.13 and 339.301 Florida Statutes are complied with within thirty days from the receipt of this notice and written notice of compliance furnished to the Department of Transportation's Administrator of Outdoor Advertising ... or in the alternative, an administrative hearing under Section 120.57 Florida Statutes is requested by you within 14 days of receipt of this notice, then the above described violation(s) shall be considered to be true. In either case if you fail to reply within the 30 day period above, the Department of Transportation reserves the right to take such action as the law permits including by but not limited to the removal of the sign(s) in violation without further notice." (emphasis supplied)
This printed portion of the notice complies with Florida Statute § 479.08, Revocation of permits and Florida Statute § 120.60(5).
Within thirty days of the foregoing notice, acting on the reasonable belief that he was entitled to pay the fees due, Walker again attempted to pay the fees. Once again DOT refused payment. Walker then requested an administrative hearing. During the pendency of the proceedings, one of Walker's signs was cut down by DOT employees.[8]
*99 The DOT contends that it was not required, and the notice of March 21, 1977 was not intended, to afford Walker thirty days within which to pay the fees due, but that the sole purpose was to allow him to claim a hearing. The DOT further contends that the only issue to be addressed at such hearing would be whether Walker had in fact paid fees timely, a matter not in dispute. Acceptance of DOT's interpretation renders Walker's right to notice a nullity and the mandamus proceeding meaningless.
We reject these contentions and agree with that portion of the hearing examiner's order which recommends that Walker be afforded an opportunity to pay the permit fees due.
The basic contention of DOT is that its past policy of allowing sign owners to purchase annual permits after the January 1st due date was improper, not authorized by the statutes, and therefore subject to be abandoned at any time without notice to sign owners. The same contention was made in Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977) and rejected by this Court.
The record before us establishes, and DOT concedes that, it has in the past issued permits to persons paying fees even several years late. Appellant Walker himself paid such late fees covering three years in 1974 and DOT has continued to accept late fees as to signs not affected by the Ladybird Act. This policy was widespread and was known to, and relied on by, sign owners. Testimony of the Administrator of Outdoor Advertising for the State of Florida in the record before us is that it was the practice of DOT to allow fees to be paid after January 1, and that delinquency notices were sent out giving a grace period, or opportunity to pay, after the January 1st date. There was no evidence introduced that DOT had at any time prior to the "new procedure" being adopted, refused to accept late fees from any sign owner.
The Legislature has authorized the DOT to collect fees and has set out the annual due date of the fees. Nothing in the statutes proscribes DOT's acceptance of fees after the due date. For a number of years DOT has construed the statutes to allow collection of fees after the due date. As the agency charged with the responsibility of administering Chapter 479 and related statutes, the construction placed on these statutes by DOT is persuasive with this Court. This is particularly true where, as here, the agency's construction has been established by long usage.[9] As stated by this Court in Austin v. Austin, 350 So.2d 102, 104 (Fla. 1st DCA 1977):
"The law is well settled that longstanding statutory interpretations made by officials charged with the administration of the statutes are given great weight by the court ..."
In State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823, 828 (Fla. 1973), the Florida Supreme Court rejected the Board's contention that despite its past practices, it was not legally authorized to award dates based upon traditional racing seasons, stating:
"It has been invariably the practice of the Board . .. to issue annual licenses and annually fix and allocate the racing dates of the Florida greyhound tracks for the period of September of each year to September of the following year. Such administrative construction of the statute by the agency or body charged with this administration is entitled to great weight and will not be overturned unless clearly erroneous ..."
Since this litigation, DOT adopted a rule on December 10, 1977,[10] which states that late fees will not be accepted. In apparent response, the Legislature has amended Florida Statute § 479.07(3) to require DOT send *100 a second notice of fees due and allow for payment, with a 10% penalty for tardiness, after the due date.[11] Thus, DOT's past practices, with the addition of the penalty provision, have now been codified.
Our decision has not required consideration of the claim of DOT that failure to timely renew the annual permit on a sign causes automatic expiration of the permit and gives the Department the immediate right to remove the sign. Questions of confiscation and due process which might arise under the interpretation of the statutes urged by the Department are not determined in this proceeding.[12] It is also unnecessary to rule on the extent to which, if any, the Ladybird Act allows the states to use police power, as claimed by DOT, in order to avoid the federally mandated payment of compensation for signs removed under the beautification program.[13]
The public good contemplated by the Highway Beautification Act is not superior to the right of the citizen to own private property and to be treated fairly by his government with respect to that property. The Florida Legislature has expressly recognized the right of owners of certain signs to be compensated for loss of these signs. The DOT may not avoid the right to compensation by refusing to accept the permit fees which it is empowered to collect under Chapter 479. Therefore, in the absence of a showing that a particular outdoor advertising structure poses an imminent threat to public safety, the Department must give notice and reasonable opportunity to renew sign permits on existing signs.
Accordingly, the order below is REVERSED and the cause REMANDED with directions that appellant Walker be compensated for any signs removed following his attempts to pay the fees due, and that, as to his remaining signs, the Department accept payment of fees due and issue the current permits.
BOYER, Acting C.J., concurs.
SMITH, J., concurs in part and dissents in part.
*101 SMITH, Judge, concurring in part and dissenting in part:
I agree that Mr. Walker should be allowed to reinstate his expired permits for the two I-75 advertising signs which remain. I agree also that the Department should compensate Mr. Walker for the I-75 sign that the Department took down sometime in 1977, thus treating it as removed for its nonconformance to 1971 statutes implementing the Highway Beautification Act of 1965. Sections 479.11, 479.24, Florida Statutes (1977); Sections 14-10.19 et seq., Fla. Admin. Code. If that sign is still intact and can be replaced, I would allow the Department the alternative of restoring Mr. Walker to his previous position, upon his tender of fees past due, by paying to replace the sign, which would remain subject to removal, upon payment of compensation, for its nonconformance to Section 479.11, implementing the Highway Beautification Act.
In an unpublished order the majority have awarded $2,500 in attorneys' fees to Mr. Walker. I do not agree that the Department is shown by this record to have so plainly violated Chapter 120, Florida Statutes, the Administrative Procedure Act of 1974, that it should pay attorney's fees assessed under Section 120.57(8). Jess Parrish Mem. Hosp. v. Florida Public Employees Relations Comm'n, 364 So.2d 777 (Fla. 1st DCA 1978).
I write because I think the majority opinion skirts the simple issue which controls Mr. Walker's particular case and, instead, launches a broad and unjustifiable attack on Chapter 479 and the Department's administration of it. I think the controlling issue intimated in the closing lines of the majority opinion, ante p. 100, is whether the Department in 1976 gave Mr. Walker "notice and reasonable opportunity to renew sign permits on existing signs"; or to contest the violations charged; or to contest the legality, wisdom or application to him of the Department's decision to order down signs for which permits had expired. The majority opinion omits reference to the fact that in August 1976 the Department sent to Mr. Walker a notice precisely to that effect. In my opinion that notice, though substantial in form and content, was imperfectly executed in the particular circumstances of this case; hence my concurrence in the result of the court's decision. The majority are of the view that the effect of the August 1976 notice and the timeliness of Mr. Walker's response to it were determined adversely to the Department by the circuit court mandamus proceedings in March 1977. Although the question is debatable, I think that was not the intent and effect of the circuit court's order, which in ordering an administrative hearing appears to have remitted those issues to Section 120.57 proceedings, as we have done in similar circumstances. See Graham Contracting, Inc. v. State Dept. of General Services, 363 So.2d 810, 814 (Fla. 1st DCA 1978). If those issues were finally determined on the merits by the circuit court, as the majority have suggested, then it is the ensuing administrative proceedings, and our consideration of the resulting record and order, which have become, to use the majority's phrase, "a nullity and ... meaningless"; and it is necessary to say no more in this case than that res judicata controls.
But the majority have something else in mind, and the majority opinion says quite a bit more. Noting the other signboard cases before this court, ante p. 97 at fn. 5, which presumably present different circumstances and no question of res judicata, the majority express the view that, irrespective of the enforcement policy announced by the unmentioned August 1976 notice, the Department is by law frozen to its interpretation of Chapter 479 before 1976; consequently, that the Department is bound to "collect" past due permit fees from owners who do not timely tender them; and that the Department's 1977 rules against reinstatement of expired permits are overridden by 1978 legislation which is thought to codify the Department's "past practices." Chapter 78-138, amending Section 479.07(3), Florida Statutes (1977). By such reasoning, laced with references to the "confiscation" that might otherwise result, and to Congress' supposed intention to preempt *102 state police powers, the majority opinion extends far beyond the necessities of this case and stretches to create a broad precedent governing other cases now before the court, and others yet unborn, regardless of whether the August 1976 notice sent those signowners was effective in the circumstances of those particular cases.
The majority opinion appears to rest upon the thesis that the state's power to order the removal of advertising signs which are unlawfully maintained without current permits is compromised by the state's obligation to pay compensation for the removal of advertising signs which are lawfully maintained as nonconforming to the 660-foot setback requirement of the federal Highway Beautification Act of 1965. Thus, the majority's conclusion, ante p. 100, that the Department "may not avoid the right to compensation by refusing to accept the permit fees which it is empowered to collect." If that is the intended effect of the court's decision, I dissent from it, and here express my conviction that the state's power to license outdoor advertising signs, and to order down those whose permits expire upon failure of timely removal, long antedated 1971 legislation implementing the Highway Beautification Act of 1965; that the state's power to enforce its police powers in respect to outdoor advertising signs was not displaced by the federal legislation, nor by latter-day sections of Chapter 479 which implement that legislation; that, though the Department previously misinterpreted Chapter 479 as allowing reinstatement of unlawful signs near I-75, the Department like any state agency has power to correct or change its interpretation of a statute, provided only that it comply with Chapter 120; and that signowners who do not timely renew permits under Florida regulatory statutes and rules take the risk that, when their signs are consequently ordered down, after appropriate notice and opportunity for hearing, other statutes implementing federal policy will forbid their replacement near interstate highways.

I.
The majority opinion apparently equates taking down a highway advertising sign with confiscating an automobile left unattended on a public street. Ante p. 100, fn. 12. There are profound differences. Whatever the cost or value of its materials otherwise employed, an advertising sign has no value to the owner unless it is exhibited to others. Neither Chapter 479 nor the Department has any purpose to confiscate the poles, boards, and other structural members of Mr. Walker's signs. Not until Mr. Walker refused to remove his signs did the Department take any action lessening the intrinsic value of any sign, by sawing the supporting poles of one of them. Had the Department dug up the sign and delivered it intact to Mr. Walker's home or farm, the same legal issues would exist in this case, though Mr. Walker could have reused the poles and boards in any convenient way. Upon paying a small fee and obtaining a permit, he could have erected the sign again in a proper place beyond 15 feet from a state highway or beyond 660 feet from an interstate or federal aid highway. When Mr. Walker sought a stay of the order directing removal of the two remaining signs, pending this appeal, the Department granted a stay on the condition that the advertising messages be painted over. This court, to preserve existing circumstances, eliminated that condition of the order. But, had the advertising messages been painted out, and the poles and boards left in place, Mr. Walker's structures would have lost no intrinsic value though they were useless as advertising. Thus conventional property interests have not been taken. What is taken is Mr. Walker's asserted right to continue "using the highway"[1] to transmit advertising messages to motorists.
"It is not the function of this Court to write with a legislative pen... ." Walton v. Walton, 354 So.2d 464, 466 (Fla. *103 1st DCA 1978). Rather, it is in the province of legislators to debate whether highway motorists are entertained and informed or are distracted and offended by signs advertising the offsite sale of products. To that issue the Florida legislature spoke 38 years ago, in 1941, when it enacted close regulations of commercial advertising signs and strict permitting requirements for those which were to be allowed. The cause for which the Department seeks removal of Mr. Walker's signs is that they were unlawfully maintained in 1976 under expired permits. That ground for removal of signs, indeed for prosecution of the owner, was written into law by Chapter 20446, Florida Laws (1941), and it remains substantially the same today. Sections 479.10, .17, Florida Statutes (1941)-(1977).[2] That ground for removal of signs, without compensation, is entirely independent of the 1971 legislation, implementing the Highway Beautification Act of 1965, which authorized removal of and compensation for existing signs lawfully nonconforming to federal setback requirements on interstate and federal aid highways. Chapter 71-971, Florida Laws; Sections 479.23, .24, Florida Statutes (1973)-(1977).[3] The court's position seems to be that commercial advertising signs which are unlawfully maintained in violation of the state permit law may not be removed without compensation to the owner, if otherwise they are lawfully nonconforming signs for which the federal Highway Beautification Act requires compensation upon their removal. In this the court erroneously reads the federal Highway Beautification Act, and its implementing Florida legislation, as swallowing a state police power that was asserted, exercised, and held constitutional long before there were federal interstate highways and long before there was any federal or state policy against commercial advertising signs within 660 feet of such highways. Hav-A-Tampa Cigar Co. v. Johnson, 149 Fla. 148, 5 So.2d 433 (1941); John H. Swisher & Son, Inc. v. Johnson, 149 Fla. 132, 5 So.2d 441 (1941).
As originally enacted in 1941, Chapter 479 comprehensively regulated both persons *104 engaged in the outdoor advertising business and individual advertising signs near highways, whether or not owned by persons in the advertising business. "Licenses" to engage in the business were issuable under Section 479.04, whereas "individual device permits" were issuable under Section 479.07. Both licenses and permits were subject to revocation upon a showing of "false or misleading" statements in the application, or for other violations of Chapter 479. Sections 479.05, .08. But the law also provided for the immediate removal of a sign upon the expiration of its permit; and that without notice, hearing, or revocation proceedings. Thus Section 479.07 required payment of annual permit fees; forbade the erection or maintenance of any advertising sign "without first obtaining a permit therefor from the chairman [of the State Road Department] and paying the annual fee therefor"; prescribed the contents of annual permit applications and established the fees; and provided that "permits issued hereunder shall expire on the first day of October of each year." Section 479.10 required the permittee to remove any sign "within thirty days after the date of the expiration or revocation of the permit for the same." Section 479.17 declared any sign maintained in violation of Chapter 479 to be a "public and private nuisance," directed its removal "forthwith" by the Department, and authorized entry on private property for that purpose, save only that notice and an opportunity for hearing be given before removal of a sign, valued at $100 or more, owned by one holding an "unexpired license" to engage in the advertising business.
Few changes have been made in these regulatory measures since 1941. The annual permit fees are different now, but still nominal: at the rate prescribed by Section 479.07, Florida Statutes (1977), the annual permit fee for each of Mr. Walker's I-75 signs was $10. In 1963 the legislature changed the expiration date of permits from October 1 to January 1 and directed that, on or before the preceding December 1, the Department should send each licensee and permittee a notice listing each license and permit "which shall expire on the first day of January." Chapter 63-237, Florida Laws; Section 479.07(3), Florida Statutes (1963)-(1973). In 1974 the legislature directed that the annual notice be sent on or before November 1. Chapter 74-80, Florida Laws; Section 479.07(3), Florida Statutes (1974 Supp.)-(1977).
The required annual permit for an advertising sign near a public highway is to be distinguished from its "permanent permit tag," which is but a means of identification. Originally the statute provided that each sign bear an identifying label, issued annually by the Department, "corresponding in color to the automobile license plate of the State of Florida for the current year." Section 479.09, Florida Statutes (1941). In 1963 the legislature repealed Section 479.09, incorporated some of its provisions in Section 479.04, and there provided that each sign be identified by a "serially numbered metal permit tag which shall indicate the year for which the permit is valid," issued upon payment of the renewal fee. Chapter 63-237, Florida Laws. The 1974 amendment discontinued the annual issuance of identifying permit tags and provided that metal tags "of a kind furnished by the department for the year 1974" should be "considered permanent permit tags" when kept "currently valid" by the annual payment of renewal fees by January 1. Chapter 74-80, Florida Laws; Section 479.07(4), Florida Statutes (1974 Supp.).
The 1974 legislature also introduced into Section 479.07(4) a slight ambiguity which provides a scarcely plausible basis for the Department's practice at that time, now abandoned, of reinstating expired permits, upon payment of overdue fees, for signs which could not lawfully be erected as new at the time of reinstatement. Section 479.07(3) previously stated that annual permits "expire" on January 1. Chapter 74-80, Florida Laws, amended that section to state, instead, that fees for annual permits shall be payable on January 1.[4] Chapter *105 479 elsewhere retained its references to permit expiration and its consequences: Section 479.07(4), Florida Statutes (1975), continued its presumption that a sign having no "currently valid permanent permit tag" is maintained in violation of Chapter 479 "and shall be subject to removal by legal representatives of the department." Section 479.10 continued to require permittees to remove any sign within 30 days after "the date of the expiration or revocation of the permit for the same." Section 479.17 continued to declare "a public and private nuisance" any sign maintained in violation of Chapter 479, and continued to admonish the Department to remove it "forthwith" unless the sign was worth more than $100 and the owner "holds an unexpired license issued under s. 479.04," in which case the owner was entitled to 30 days' notice and an opportunity, not to pay past due permit fees, but to show that his sign "does not violate the provisions of this chapter."
In 1978, after the present controversy concerning Mr. Walker's three I-75 signs had fully matured, the legislature again amended Section 479.07(3) to provide for an additional notice to signowners who did not renew their permits before January 1:
If the permittee does not pay such fees within the 60-day period [between November 1 and January 1], the department shall send a second notice to the permittee requiring payment within 30 days after the receipt of the notice together with payment of a delinquency fee of 10 percent of the amount originally due. [Chapter 78-138, Florida Laws; Section 479.07(3), Florida Statutes (1978 Supp.).]
By the same act, the legislature extended the right of notice and opportunity for hearing to any "licensed or unlicensed" signowner whose sign the Department proposed to remove as unlawfully maintained. Section 479.17, Florida Statutes (1978).

II.
In the application of Chapter 479 to the circumstances of this case, there are two controlling issues of law, each distinct from the other. One is whether Chapter 479 subjects an individual advertising sign to removal by the owner, or by the Department if the owner refuses, when the permit for its maintenance has expired without timely renewal. The other is whether notice and an opportunity to be heard must be given the owner when the Department determines that such a sign must be removed because its permit has expired. I think the answer to both questions is yes.

A. Expiration and removal
I think Sections 479.07, .10, and .17 are now and have been, since 1941, susceptible to no reasonable interpretation but that the Department is required to remove any advertising sign which is maintained "as a public and private nuisance" by an owner who fails to remove it within 30 days after expiration of its permit. That statement requires one qualification. If no other statute prevents it, and the owner tenders the appropriate fee, the Department may treat the offending sign as new, issue a new "serially numbered permanent metal permit tag," Section 479.07(4), or recognize the old one as revived, and issue a current annual permit. That in effect is what the Department did when, in January 1975, it sent field representatives around to collect past due permit fees from various signowners, including Mr. Walker. (Incomprehensibly, the field representative then collected Mr. Walker's past due fees for 1972, 1973, and 1974, but did not collect the past due fees for 1975.) For signs other than those on I-75, the Department evidently accepted *106 the 1975 and 1976 permit fees when Mr. Walker tendered payment in late 1976.
The Department's action in restoring Mr. Walker's non-interstate highway signs to legitimacy in 1976, instead of removing them "forthwith," was proper under the law and Department rules as they then existed. Most of Mr. Walker's signs were not located on federal aid highways to which the Highway Beautification Act applied and they were not within 15 feet of any state highway. Section 479.11. Therefore, illegal as the signs were when the field representative came calling in 1975 and when Mr. Walker tendered payment in 1976, the signs apparently satisfied existing criteria for the permitting of new signs. If those signs could then lawfully have been erected anew, the Department could properly have then interpreted Chapter 479 to allow them to remain, instead of going through the motions of ordering them down and then allowing them up again. But, when Mr. Walker's three I-75 signs became unlawfully maintained and subject to removal because their permits expired, there was no countervailing authority in the Department to treat the signs as new and to reinstate their expired permits. In 1971 Mr. Walker's three signs were lawfully nonconforming to the 660-foot setback requirement of the Highway Beautification Act, Section 479.11, because the signs were then "lawfully in existence." Section 479.23, Florida Statutes (1971), ante fn. 3. But in 1976, their permits having expired, the signs had no lawful existence. They were required to be removed without compensation pursuant to Sections 479.07, .10, and .17, and Section 479.11 prohibited their restoration.
Considering that the object of Sections 479.10 and .17 is not to take and carry away Mr. Walker's offending signs, but to remove them from near the highway, I see no reason to fear that enforcement may be an unconstitutional "confiscation." See majority opinion, text at fn. 12. State Highway Dept. v. Branch, 222 Ga. 770, 152 S.E.2d 372 (1966), cited by the majority opinion, did not concern a Georgia statute directing the removal of advertising signs upon the expiration of their permits. That decision declared unconstitutional a Georgia statute which directed the removal within two years, without compensation, of all lawfully existing signs which did not conform to the Highway Beautification Act proscription of signs within 660 feet of federal aid highways.[5] In Mr. Branch's case, the Georgia statute threatened removal of his sign for the reason that it was within 660 feet of the Highway, where it had stood since before Georgia adopted the federal policy. In Mr. Walker's case, Sections 479.10 and .17 required removal of his I-75 signs from the roadside because their permits had expired.
Unlike the Georgia statute condemned in Branch, Florida statutes provide for compensating the owner of a lawful sign removed for nonconformity with the Highway Beautification Act. Sections 479.23, .24. But if Florida's 1971 legislation had required the immediate removal of such signs, without compensation, Branch would be scarce authority for doubting its constitutionality. On this question Branch stands alone, and it is refuted by several decisions of other state supreme courts. For example, in the much-cited case of Markham Advertising Co. v. State, 73 Wash.2d 405, 439 P.2d 248, 261 (1968), app. dismissed, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969), the Washington Supreme Court upheld, as against due process objections, a state statute which similarly allowed a short amortization period (unnecessarily so, said the court) for signs existing at the time of the 660-foot prohibition, and then required their removal without compensation. The court stated:
Many other courts, considering like statutes, support our conclusion that the regulation of outdoor advertising is a reasonable and proper exercise of the police *107 power; Moore v. Ward, [377 S.W.2d 881 (Ky. 1964)]; Ghaster, Inc. v. Preston, [176 Ohio St. 425, 200 N.E.2d 328 (1964)]; Opinion of the Justices, [103 N.H. 268, 169 A.2d 762 (1961)]; New York State Thruway Authority v. Ashley Motor Court, Inc., [10 N.Y.2d 151, 218 N.Y.S.2d 640, 176 N.E.2d 566 (1961)]; Hav-A-Tampa Cigar Co. v. Johnson, 149 Fla. 148, 5 So.2d 433 (1941). We know of only one court which has invalidated a statute of this type, and we find the opinion singularly unpersuasive. State Highway Dept. v. Branch, 222 Ga. 770, 152 S.E.2d 372 (1966).
Plaintiffs further contend that the [Washington] Act deprives them of due process of law because it authorizes the taking of their property without compensation... . When a court determines, as we have in this case, that the police power has been properly invoked, there is no basis for this contention... Plaintiffs' due process rights have been secured to them once it has been determined that the exercise of the police power is in harmony with constitutional requirements. It should be noted that our research discloses that 23 of the states which have enacted legislation comparable to [the Washington statute] have also made no provision for the payment of compensation under their statutes.
There is double significance, I think, in the Washington court's approving citation to the Florida Supreme Court's decision in Hav-A-Tampa Cigar Co. v. Johnson, 149 Fla. 148, 5 So.2d 433 (1941). First, it reminds us that our own Supreme Court, 37 years ago, upheld the constitutionality of the 1941 act which extensively regulated advertising signs and directed the removal "forthwith" of signs maintained in violation of Chapter 479, including those signs which are unlawfully maintained, as a public and private nuisance, under an expired permit. Sections 479.07, .10, and .17, Florida Statutes (1941). And second, the Washington court's citation to Hav-A-Tampa, when considering a far more restrictive statute than those of Florida, calls to our attention that the 1941 Florida act forbade advertising signs within 15 feet of state highways and contained no provision grandfathering a special status for existing and nonconforming signs. The act provided: "All outdoor advertisers shall be given one hundred twenty days in which to comply with this Act." Chapter 20446, Section 20, Florida Laws (1941). Thus, as applied to existing signs within 15 feet of state highways, the 1941 act "confiscated" their right to remain there, and provided no compensation. The Georgia law condemned by Branch and the laws upheld by Markham and other decisions had the same effect on existing signs within 660 feet of a federal aid highway. In either case, the state's police power is more than adequate to support the legislation.
What was taken by the regulation, therefore, was the value which the Thruway itself had added to the land and of this the defendant cannot be heard to complain. [New York State Thruway Auth. v. Ashley Motor Court Inc., 10 N.Y.2d 151, 218 N.Y.S.2d 640, 644, 176 N.E.2d 566, 569 (1961).]
[T]he statutes only deprive an owner of a claimed right to use his land to communicate with those using the highway... [A]ny such right to so communicate can be taken from the landowner without compensation by the state for the purpose of improving the highway as a means of passage for the public. [Ghaster Properties, Inc. v. Preston, 176 Ohio St. 425, 431, 200 N.E.2d 328, 333 (1964).]
I am not aware of any court decision to the effect that the federal Highway Beautification Act of 1965, and its provision of compensation for the removal of existing signs nonconforming to its 660-foot restriction, preempted the field and prevents state action to remove the same signs but without compensation. I disagree with those implications in the majority opinion, text at fn. 13. Markham held to the contrary, 439 P.2d at 256-57. Even the passionate dissent in Markham decried the decision because "We dance to the federal tune." 439 P.2d at 264. And Branch contained similar imprecations. 152 S.E.2d at 373. No, there is no federal preemption here, even as regards *108 the state's power to order down all previously existing signs within 660 feet of I-75. Certainly there is less reason to suppose that the federal law preempts Florida's power to take down signs that are unlawfully maintained without current state permits.
I therefore have no doubt that Chapter 479 constitutionally subjects an individual advertising sign to removal by the owner, or by the Department if the owner refuses, when the permit for its maintenance has expired without timely renewal before January 1 of any year. Despite the imperatives of Sections 479.07, .10, and .17, I think the Department may decide as a matter of policy, though it is not required to do so, to treat such offending signs as new and revive their legitimacy, provided that they could lawfully be permitted as new in fact. Signs within 660 feet of I-75 have been ineligible, since 1971, for that favored treatment.
In my opinion there was no basis in law for the Department's pre-1976 policy of dispatching field representatives to collect past due permit fees for interstate highway advertising signs such as Mr. Walker's three on I-75. But even if that were a permissible policy, it surely was not obligatory under Chapter 479. Yet by its statement that "the construction placed on these statutes by DOT [before 1976] is persuasive with this Court," and by compelling a continuation of "DOT's past practices," ante pp. 99, 100, the majority opinion freezes the Department, over the Department's objection, in statutory interpretation which was always doubtful if not unlawful and which is now abandoned. Even assuming that "DOT's past practices" represented a permissible interpretation of Chapter 479, it is astonishing that a court would overturn an agency's current interpretation of a statute in pretense of giving agency interpretations "great weight" and not disturbing them "unless clearly erroneous." Certainly Biscayne Kennel Club, cited by the majority opinion, did no such thing.[6]
I had supposed that this is an era when governmental agencies are to be encouraged to change their minds and their ways when past practices are made to appear to them unwise. McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). When the past practice appears to the agency to be illegal as well as unwise, as is the case here, I would not have expected this court to dictate that agency discretion be exercised to reinstate the abandoned practice. "It is not for us to define a `reasonable' policy and attribute it to an agency. The agency itself must announce and explicate its policy." General Development Corp. v. Division of State Planning, 353 So.2d 1199, 1210 (Fla. 1st DCA 1977).
Legalities aside, it seems to me that the Department, charged these many years with enforcing Chapter 479, at least has discretion enough to decide that it will rely on mailed notices to signowners, and will no longer devote public revenues to dispatching employees throughout the state to search out Mr. Walker in his watermelon field and "collect" from him, by means which the majority have not suggested, an overdue $10 fee for a sign whose permit has expired. When in addition it appears to the Department that collecting overdue fees in that manner may reinstate Mr. Walker's I-75 signs in violation of the Highway Beautification Act, and so jeopardize the entire state's participation in federal aid highway funds, it seems to me that the Department has a reason, a very good reason indeed, to change its prior interpretation of the law.
On January 26, 1977, by emergency rule 14ER77-09(3), the Department gave constructive notice to signowners throughout *109 the state that it would no longer accept past due permit fees for advertising signs illegally maintained without current permits:
Fees for permits which are allowed to become delinquent will not be accepted.
That provision was made permanent in rule 14-10.04(3), Fla. Admin. Code, effective April 21, 1977 (Code Supp. No. 79), and was preserved in the December 10, 1977, revision of the permanent rule. Rule 14-10.04(3), Fla. Admin. Code (Supp. No. 86). This rule is no vendetta against interstate highway signowners; the rule applies also to signs unaffected by the Highway Beautification Act. Other 1977 rules make the same provision for the payment of license fees of persons in the advertising business.[7] The quoted rule stands effective and unchallenged today, except as it may be affected by the majority's persuasion to the agency's prior, illegal, and abandoned practice.
The majority opinion states that the 1978 Legislature, apparently in response to this rule, "codified" the Department's "past practices" of collecting past due fees for signs whose permits had expired. Ante p. 100. That is not the case. Chapter 78-138, Florida Laws, the legislation referred to, simply provided that, upon a permittee's failure to make timely payment within 60 days of receipt of the notice mailed on or before November 1, "the department shall send a second notice to the permittee requiring payment within 30 days after the receipt of notice together with payment of a delinquency fee of 10 percent of the amount originally due." Section 479.07(3), Florida Statutes (1978 Supp.). The effect of that legislation is to provide a second notice and to extend the life of the former year's permit 30 days more, to around January 30. Thus, instead of expiring automatically on January 1, the former year's permit expires automatically 30 days after the owner's receipt of the second notice. The effect of expiration is the same. The owner must remove the sign within 30 days thereafter or be held to have committed a misdemeanor. Section 479.10, Florida Statutes (1977). Significantly, the 1978 legislation added provisions to Section 479.17, but left intact its declaration that an unlawfully maintained sign is a "public and private nuisance" and its direction that the Department forthwith remove it. Section 479.17, Florida Statutes (1978 Supp.).

B. Notice and opportunity for hearing
Until 1978 Chapter 479 maintained a clear distinction between permits that expire and permits that are subject to revocation because of false statements in them or other violations of Chapter 479. The practical distinctions were that revocation proceedings included an opportunity to cure and for hearing, and expiration consequences did not. The consequence of permit expiration was removal of the sign within 30 days by the owner or, failing that, removal "forthwith" by the Department. Sections 479.10, .17, Florida Statutes (1977). Revocation, on the other hand, required a 30-day opportunity to cure any formal Department adjudicatory action upon the permit, for the review of which the permittee was granted circuit court review. Section 479.08, Florida Statutes (1977).[8] When a *110 sign became unlawful because of the expiration of its annual permit, Section 479.17 accorded no right of hearing unless the sign was worth $100 or more "and said owner holds an unexpired license issued under s. 479.04," the section licensing persons in the outdoor advertising business. The 1978 amendments, which are inapplicable as such to this controversy, extended the notice and right of hearing provisions of Section 479.17 to the owners of all unlawful signs, except those valued at less than $100 or those whose ownership was unknown:
"[I]f any licensed or unlicensed outdoor advertising structure or outdoor advertising sign of the value of $100 or more bears thereon the name of the owner thereof, the said owner shall be given written notice of the alleged violation, and shall have 30 days after the receipt thereof within which to show that the said advertisement, advertising sign, or advertising structure does not violate the provisions of this chapter." [Chapter 78-138, Fla.Laws; Section 479.17, Florida Statutes (1979 Supp.).]
Under 1978 provisions of Chapter 479, therefore, the owner of any sign whose permit has expired after a 60-day notice to renew, mailed on or before November 1, and a second 30-day notice, Section 479.07(3), Florida Statutes (1978 Supp.), is yet required to remove the sign within 30 additional days, at pain of prosecution for a misdemeanor, Section 479.10, and the sign is yet declared a "public and private nuisance" which the Department is required to abate, Section 479.17; provided, that the Department shall give a 30-day notice and opportunity for hearing before removing a sign bearing the name of the owner and having a value of $100. Section 479.17 (1978 Supp.). During that last 30-day period, the owner is not entitled to reinstate his permit by paying the past due fee, but is entitled only "to show that the said advertisement, advertising sign, or advertising structure does not violate the provisions of this chapter." Section 479.17 (1978 Supp.).
Because the controlling events in this case occurred in 1976, Mr. Walker was not then entitled to the benefits provided by the 1978 legislation; nor is Mr. Walker's case adversely affected by the Department's later rule, in existence since January 26, 1977, providing that "fees for permits which are allowed to become delinquent will not be accepted."
In mid-1976, several months before adopting rules expressing a firm policy against acceptance of overdue permit fees, the Department determined to notify the holders of expired permits (1) that it proposed to accept payment of past due fees, and to reinstate expired permits, for a period of 30 days following the permittee's receipt of the notice; and (2) that the Department then proposed, failing timely reinstatement, to take lawful action including removal of offending signs. On August 19, 1976, the Department sent that notice to Mr. Walker at the Monticello, Florida, address he had registered with the Department.
In purpose and substance, if not in execution, the August 19, 1976 notice to Mr. Walker more than satisfied the spirit of the later-enacted 1978 amendments to Sections 479.07 and .17. The fees sought from Mr. Walker for 1976 were already delinquent by eight months. The Department, on or before November 1, 1975, had mailed Mr. Walker notice of their coming due on or before January 1, 1976. Mr. Walker never saw the November 1975 notice because he had moved to Okeechobee to farm watermelons, leaving his family behind, and they did not forward the notice to him. The second notice, sent by certified mail on August 19, 1976, advised Mr. Walker of the amounts overdue, charged violations consisting of "NO VALID PERMIT TAGS," gave Mr. Walker 30 days from receipt to pay the overdue fees or 14 days to request a Section 120.57 hearing, and advised Mr. Walker that, if he did not reply within 30 *111 days, the Department would take action including but not limited to removing his illegal signs.[9] The August 1976 notice thus had a twofold purpose: to give delinquent signowners a 30-day grace period to pay past due fees, and to give them a 14-day period in which to request a hearing to contest the Department's proposed action. The Department thus correctly perceived, in August 1976, that its proposal to remove offending signs, after expiration of the grace period, would affect the substantial interests of signowners and so required Department compliance with the Administrative Procedure Act of 1974, Chapter 120.
So, although conforming amendments to Chapter 479 were not to come until 1978, the Administrative Procedure Act, effective January 1, 1975, obliterated the only significant distinction in Chapter 479 between permit revocation, for which notice and hearing were required, and permit expiration, which immediately resulted in removal of offending signs without notice and opportunity for hearing. The Department's notice of August 19, 1976, thus anticipated the 1978 amendments to Chapter 479 as well as our later decisions, applying Chapter 120, which held that such proposed agency action as removal of a sign must conform to Section 120.57, i.e., that the agency must afford substantially affected persons an opportunity for a formal or informal hearing, and that any agency decision not conforming to Section 120.57 is preliminary only, irrespective of the tenor of its announcement. Capeletti Bros., Inc. v. State Dept. of Transportation, 362 So.2d 346, 348 (Fla. 1st DCA 1978); Couch Constr. Co., Inc. v. Dept. of Transportation, 361 So.2d 172 (Fla. 1st DCA 1978).
The Department's election to give Mr. Walker personal notice and an opportunity to request Section 120.57 proceedings, in which he might dispute the facts, the law, and the policy underlying the Department's decision, made it unnecessary that the Department then have a rule, such as that adopted in January 1977, formalizing its emerging policy. As a practical matter, the personal notice which the Department intended for Mr. Walker was superior to the constructive notice afforded by rulemaking, Section 120.54; and the hearing opportunity thus offered was quite as broad as that which any signowner, later receiving notice of the 1977 rulemaking, would have had in Section 120.54 rulemaking proceedings. We have recognized "the inevitability and desirability of refining incipient agency policy through adjudication of individual cases"; and we have stated that, just as rulemaking "displaces proof and debate of policy in 120.57 proceedings," so Section 120.57 proceedings provide a forum for debate of "emerging policy not recorded in rules or discoverable precedents," and that the hearing officer's function in such proceedings
encourages an agency to fully and skillfully expound its nonrule policies by conventional proof methods; and, in appropriate cases, subjects agency policy makers to the sobering realization [that] their policies lack convincing wisdom, and requires *112 them to cope with the hearing officer's adverse commentary.
McDonald, ante, 346 So.2d at 581, 582-83.
The ultimate question, therefore, is whether and when the notice sent by certified mail to Mr. Walker on August 19, 1976, was effective to offer him the 30-day grace period for payment which the Department intended he should have, and the 14-day opportunity to request a hearing to contest the facts, the law, or the policy which the Department undertook to implement. It may be that the Department was obligated, by reason of the lulling effect of its past nonenforcement of Sections 479.10 and .17, to give signowners notice and a grace period for payment of past fees. At any rate, the Department undertook to do so, and the 30-day period for payment is not unreasonable. That same period is now prescribed by Section 479.07(3), Florida Statutes (1978 Supp.), for payment upon receipt of the second notice to pay delinquent fees.
The Department's certified mail, containing the August 19, 1976 notice, was delivered to Mr. Walker's home in Lamont or Monticello and was receipted for by Mr. Walker's young son on August 26. Postal authorities returned the signed receipt in due course to the Department. Mr. Walker himself was still farming watermelons in Okeechobee when the notice was received at home. After some delay, someone  evidently a member of his family  forwarded the notice to Mr. Walker. He testified that he did not receive the notice until around November 1, "when I was in south Florida farming." The hearing officer accepted that testimony as true and convincing. The hearing officer also found that "the three Hamilton County I-75 signs were all listed on one of the five pages" attached to the notice, that Mr. Walker read the notice, but that Mr. Walker "never saw the sheet on which the Hamilton County I-75 signs were listed." By the time Mr. Walker personally received the notice, on about November 1, more than 30 days had expired from the date the notice was received at Mr. Walker's home, on August 26.
In November 1976, evidently within 30 days of his personal receipt of the notice, Mr. Walker called on the Department's administrator of outdoor advertising and offered to pay both the past due and renewal fees on all his signs for 1975, 1976, and 1977. The Department refused Mr. Walker's offer, though it later accepted payment for all signs except those on I-75. On December 28, 1976, Mr. Walker tendered a $93 cashier's check in payment of permit fees for the three I-75 signs for 1975, 1976, and 1977. The tender was refused on the stated ground that those signs had been unlawfully maintained without "a currently valid permanent permit tag," in violation of Section 479.07(4), and that the Department "cannot renew permits for signs that are up illegally."
The hearing officer concluded, as a matter of law, that the August 19, 1976 notice was effective, and that the periods it prescribed for Mr. Walker's action began to run, when the notice was received by Mr. Walker's son on August 26, 1976. Therefore the hearing officer's recommended order concluded:
In summary, petitioner [Walker] failed to establish that respondent had any legal duty to accept the late tendered annual fees. Petitioner's signs along I-75 in Hamilton County are "subject to removal by legal representatives of the [respondent]." Section 479.07(4), Florida Statutes (1975).
The hearing officer did recommend, as the majority opinion notes, ante p. 99, that Mr. Walker be given an opportunity to renew the expired permits on his two remaining I-75 signs. That was recommended, not as a matter of right, but as a matter of grace, "[c]onsidering that respondent has already removed one sign, that the whole imbroglio can fairly be characterized as an innocent mix-up, and that respondent apparently did accept late tendered annual fees for petitioner's other signs." In refusing that recommendation, the Department's final order recited and adopted the hearing officer's above-quoted conclusion of law, and ordered removal of Mr. Walker's two remaining signs.
*113 In my opinion the Department's August 19, 1976 notice was not effective as notice, and the time periods it prescribed for action did not begin to run, until Mr. Walker personally received the notice on or about November 1. In these circumstances, considering the magnitude of Mr. Walker's affected interests and the change in agency policy which the notice sought to implement, nothing short of actual delivery of the notice to Mr. Walker, the permittee, could constitute notice to him. Mr. Walker and other permittees whose offsite businesses depend on their highway advertising signs may be expected to read their mail, and should be held to have read their mail when received, but personal receipt by an individual permittee is necessary to grant him "a clear point of entry, within a specified time after some recognizable event ..., to formal or informal proceedings under Section 120.57." Capeletti, ante, 362 So.2d at 348.
The intended withdrawal of Mr. Walker's authorization to maintain his I-75 signs was a "licensing" matter both in terms of Sections 120.52(7), (8), and 120.60, and in terms of the Department's rules of licensing in effect in 1976. Chapter 14-7, Fla. Admin. Code, eff. June 26, 1975.[10] As the Department recognized by its August 19, 1976 notice, Section 120.57 proceedings are appropriate in licensing proceedings. Section 120.60(1). Although Sections 120.60(4) and (5) recognize the distinction between licenses that "automatically expire by statute" and licenses which are revoked, suspended, annulled, or withdrawn, and those statutes require only for the latter that the licensee be "given an opportunity to show that he has complied with all lawful requirements for the retention of the license," the Department elected to treat Mr. Walker as entitled, even in August 1976, to make a "timely and sufficient application for the renewal of a license" and as entitled "to show that he has complied with all lawful requirements for the retention of the license." Section 120.60(4), (5). Mr. Walker was thus entitled to "reasonable notice by certified mail or actual service ... of facts or conduct which warrant the intended action." Section 120.60(5); Fla. Admin. Code R. 14-7.04(1) ("notification shall be by certified mail or by personal delivery... .") The import of these provisions is that notice is effective to create "a clear point of entry" to the remedies offered only when the affected person receives the notice. The Department may guard against the delays that its notice encountered in this instance by any appropriate means, including directions to postal authorities that its certified mail be delivered only to the addressee.
When Mr. Walker called on the Department in November 1976, and offered to pay the past due permit fees for his signs on I-75 and elsewhere, he was acting within the 30-day grace period allowed by the Department's notice. The Department refused Mr. Walker's offer on the spot, so his failure to tender actual payment until December was inconsequential. Sisco v. Rotenberg, 104 So.2d 365 (Fla. 1958). Therefore, to the extent indicated in the opening paragraph of this opinion, I agree with the majority that Mr. Walker is entitled to relief. Insofar as the majority opinion implies that the Department's August 19, 1976 notice was of no effect whatever, or that similar relief should be granted others who promptly received but did not timely act in response to that notice, I dissent.

III.
I disagree with the majority's decision to award attorney's fees to Mr. Walker in this case. Such awards should be sparingly made, and only in cases in which an agency has disregarded some clear command of Chapter 120. Section 120.57(8); Jess Parrish Mem. Hosp. v. Florida Public Employees Relations Comm'n, 364 So.2d 777 (Fla. 1st DCA 1978). Our indiscriminate use of that unusual remedy can only lessen its effect in appropriate cases.
*114 Although I think the Department was incorrect in supposing that its August 19, 1976 notice to Mr. Walker was effective when delivered to his home on August 26, the Department was merely wrong, not indifferent. The majority opinion builds its case to the contrary unfairly, I think. That opinion states that the Department, pursuant to the circuit court order in March 1977, sent Mr. Walker a notice listing the signs and stating "FAILURE TO RENEW PERMIT TAGS ABOVE LISTED SIGNS MUST BE REMOVED," thus giving rise to a "reasonable belief [by Mr. Walker] that he was entitled to pay the fees due... ." Ante, p. 98. In fact the notice stated, separately with respect to each I-75 sign, that it violated Chapter 479 for "FAILURE TO RENEW PERMIT TAG," and below the listing of violations appeared the Department's insistent statement of its continuing position: "ABOVE LISTED SIGNS MUST BE REMOVED." Mr. Walker cannot be faulted for retendering the permit fees to preserve his own position, but nothing in the circuit court's order or in the Department's notice gave grounds for any "reasonable belief" that the circuit court had concluded the matter or that the Department had capitulated.
The majority opinion takes similar liberties in its finding that "during the pendency of the [administrative] proceedings, one of Walker's signs was cut down by DOT employees." Ante p. 98, text at fn. 8. Mr. Walker testified that his sign was taken down after the circuit court issued its order for a hearing, but the Department's administrator of outdoor advertising testified to the contrary, that the sign was taken down "before we got the notice." The hearing officer made no finding and Mr. Walker's counsel submitted no proposed finding on the subject. In the absence of such a finding, which Mr. Walker had ample opportunity to request, it is inappropriate for this court to attempt a resolution of the direct conflict in the testimony.
In conclusion, I view the record as evidencing an earnest if incomplete attempt by the Department to comply with Chapter 479 and Chapter 120, Florida Statutes. I therefore concur in the result of the majority opinion on the merits, but would deny the motion for an award of fees.
NOTES
[1] Fla. Stat. § 479.07:

"(1) [N]o person shall construct, erect, operate, use, maintain ... any outdoor advertising structure... outside any incorporated city or town, without first obtaining a permit therefor from the department, and paying the annual fee therefor ...
(2) ... Every application for permit shall be accompanied by payment of the fee for each advertising structure, ... included in the application, which fee shall be based on the size of the advertising structure ... as follows: Four lineal feet or less, $1; over 4 lineal feet, $2 per 8 lineal feet or fraction thereof above 4. In addition thereto, the sum of $1 per advertising structure will be added.
(3) Fees for permits issued hereunder shall be payable on January 1 of each year. On or before November 1 of each year, the department shall prepare and send to each licensee and permittee a notice of fees due for all licenses and permits of said licensee or permittee which were issued prior to December 1 ..."
[2] See, Walker v. State, Department of Transportation, 352 So.2d 126 (Fla. 1st DCA 1977) upholding the DOT's denial of the "farm produce exemption" of Florida Statute § 479.16(2) for Walker's signs.
[3] 23 U.S.C. § 131.
[4] 23 U.S.C. § 131(g), (n); Fla. Stat. § 479.24(1); Brazil v. DOA, 347 So.2d 755 (Fla. 1st DCA 1977) holding owner of sign erected after December 8, 1971, in violation of spacing regulations of highway beautification act, was entitled, on removal of sign, to compensation based on the actual value of the materials in the sign, under Florida Statute § 479.24(2).
[5] White Advertising v. State Department of Transportation, Case # II-90; Peterson Outdoor Advertising v. State Department of Transportation, Case # II-88; A.W. Lee v. State Department of Transportation, 366 So.2d 116; and Outdoor Advertising Art v. State Department of Transportation, 366 So.2d 114.
[6] Florida Statute § 479.07(1) and (4), amended effective January 1, 1975, to require DOT issue a permanent metal tag to be affixed by owner to each sign, states that these tags "shall be maintained on the structure until returned to the department for cancellation."
[7] Peremptory writ issued March 10, 1977 by the Leon County Circuit Court, and pursuant to that writ DOT mailed the required notice to Walker. Some five months later, on August 5, 1977 DOT moved under Rule 1.540, Fla.R.Civ.P. for relief from judgment and the trial court entered an amended writ which purported to change the language required in the notice to be sent to Walker. The trial court had no jurisdiction of this motion which was in fact a belated petition for rehearing, so changes made in the language of the order, even if material, are not considered here.
[8] Testimony of Walker:

"I had a ladder up on one [sign] and I was painting. And I just came down to go to the store to get some more paint. And when I came back, they took a big chain saw and went out there and ripped down the sign. It had 10 light poles holding it up, 12 by 40's  10 big light poles. I just got off my ladder that was propped up there ... When I came back, they done took the chain saw and ripped all  just sawed it down. And I said, `Stop right now.' I said, `We have got an order out for you not to touch the signs.' He said, `I have got to cut them all down. My order is to cut them down.'"
[9] 30 Fla.Jur., Statutes, § 109, and cases cited therein.
[10] Rule 14-10.04(3) F.A.R., Supp. # 86, "Fees for permits which are allowed to become delinquent will not be accepted."
[11] Fla. Stat. § 479.07(3)

"If the permittee does not pay such fees within the 60-day period, the department shall send a second notice to the permittee requiring payment within 30 days after the receipt of notice together with payment of a delinquency fee of 10 percent of the amount originally due ..." (effective June 6, 1978)
[12] State Plant Board v. Smith, 110 So.2d 401 (Fla. 1959); Corneal v. State Plant Board, 95 So.2d 1 (Fla. 1957); 6 Fla.Jur., Constitutional Law, §§ 331-333; 16A C.J.S. Constitutional Law § 602 at 716, § 645 at 913; State Highway Department v. Branch, 222 Ga. 770, 152 S.E.2d 372 (1966) holding unconstitutional Georgia's outdoor advertising statutes which did not provide compensation on removal of signs; see, Craig v. Carson, 449 F. Supp. 385, 394 (D.C.M.C.Fla. 1978) holding invalid ordinance provision for towing, impoundment and forfeiture of automobiles left unattended on public ways.
[13] State of Vermont v. Brinegar, 379 F. Supp. 606 (D.C.Vermont 1974); 1965 Report of U.S. Senate Committee on Public Works (S.Rep.No. 709, 89th Congress) on inclusion of requirement of compensation in 23 U.S.C. § 131(g):

"The committee emphatically and unanimously rejects the use of police power in acquiring these rights, [advertising] and has provided for the use of Federal funds for paying the Federal pro rata share of the acquisition costs of such rights through purchase or condemnation. Such payment is mandatory, not permissive, on the States."
71 Michigan L.Rev., "Billboard Control Under Highway Beautification Act of 1965," Cunningham, 1296, 1313 (1973):
"It should be emphasized that Congress, in including the just compensation requirement in title 1, intended to do more than simply affirm state and federal constitutional guarantees of just compensation when private property is taken for public use. If that were all that subsection (g) was intended to do, any state that can constitutionally use its police power to effect the removal of highway advertising signs would be free of the federal compensation requirement, because in such a case there would not be `taking' of private property in the constitutional sense. But Congress intended virtually to rule out use of state police power and to require the states, when highway advertising signs are removed, either to pay the sign owners and landowners affected by the removal just compensation determined by mutual agreement or to utilize their power of eminent domain. If a state uses its power of eminent domain, `just compensation' must, of course, be determined by the state courts in accordance with their usual rules in eminent domain cases."
[1] See Mississippi State Highway Comm'n v. Roberts Enterprises, Inc., 304 So.2d 637, 639 (Miss. 1974); New York State Thruway Auth. v. Ashley Motor Court Inc., 10 N.Y.2d 151, 157, 218 N.Y.S.2d 640, 644, 176 N.E.2d 566, 569 (1961); Ghaster Properties, Inc. v. Preston, 176 Ohio St. 425, 431, 200 N.E.2d 328, 333 (1964).
[2] Section 479.10, Florida Statutes (1977), provides:

Removal.  All outdoor advertisements, advertising signs and advertising structures shall be removed by the permittee within 30 days after the date of the expiration or revocation of the permit for the same. Any permittee failing to remove any such advertisement, advertising sign or advertising structure within said 30 days shall be guilty of a misdemeanor of the second degree... .
Section 479.17, Florida Statutes (1977), provides:
Violation a nuisance; abatement.  Any advertisement, advertising sign or advertising structure which is constructed, erected, operated, used, maintained, posted, or displayed in violation of this chapter is hereby declared to be a public and private nuisance and shall be forthwith removed, obliterated or abated by the department, and for that purpose its representatives may enter upon private property without incurring any liability therefor; provided, however, that if any outdoor advertising structure or outdoor advertising sign of the value of $100 or more bears thereon the name of the owner thereof, and said owner holds an unexpired license issued under s. 479.04 the said owner shall be given written notice of the alleged violation, and shall have 30 days after the receipt thereof within which to show that the said advertisement, advertising sign or advertising structure does not violate the provisions of this chapter.
[3] Section 479.23, Florida Statutes (1973), provided that existing and lawfully nonconforming signs should be removed and paid for by the state within five years after the signs became nonconforming. Legislation in 1976 made removal of nonconforming signs permissive, not mandatory. Section 479.23 now provides:

Removal of signs.  All signs which are lawfully in existence or are lawfully erected and which do not conform to the provisions of this chapter shall not be required to be removed by the department until after the end of the fifth year after they have become nonconforming.
Section 479.24, Florida Statutes (1977), provides in part:
Compensation for removal of signs; eminent domain; exceptions.  (1) Compensation shall be paid upon the removal of all signs lawfully in existence on December 8, 1971 or signs lawfully erected which later become nonconforming. Compensation for any sign erected or completed after December 8, 1971 shall be limited to the actual replacement value of the materials in such sign. It is the legislative intent that any person erecting or completing such a sign after December 8, 1971 shall be fully compensated by the method herein provided... .
[4] Chapter 74-80 added the italicized words and deleted the words struck through:

(3) Fees for permits issued hereunder shall be payable expire on January 1 of each year. On or before December November 1 of each year the department shall prepare and send to each licensee and permittee a notice of fees due for all licenses and permits of said licensee or permittee which were issued prior to December 1 and which shall expire on January 1. Such notice shall be itemized to indicate the amount of the state license fee, the amounts of county license fees, the names of all counties to which the county license fees are applicable, and the number of permits and permit fees of each size. The permittee shall within sixty days of the receipt of the said notice pay the fees due for all outstanding permits or return the permit to the department for cancellation. ...
[5] The 1964 Georgia act provided that "No outdoor advertising sign, display or device which is inconsistent with the provisions of this Chapter shall be allowed to remain after July 1, 1966 in areas adjacent to any segment of the Interstate System... ." Ga. Code Ann. Section 95-2012a (1964 Supp.).
[6] In State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823 (Fla. 1973), the agency's reinterpretation of a statute was not the result of the agency deciding that reinterpretation was necessary. There the agency felt compelled to change its interpretation by a recent court decision. The Supreme Court, in restoring the agency's former interpretation, did not override the agency's preferred interpretation but reinforced it in the light of prior agency practice.
[7] Rule 14-10.03(2)(a), Fla. Admin. Code (Supp. No. 86):

On or before November 1 of each year the department shall prepare and send to each licensee a renewal notice of fees due for the coming year. All licenses expire on the last day of December for the year issued. Fees for licenses which are allowed to become delinquent will not be accepted.
[8] Section 479.08, entitled "Revocation of permit," provides:

(1) The department may after 30 days' notice in writing to the permittee, revoke any permit issued by it under s. 479.07 upon repayment of a proportionate part of the fee in any case where it shall appear to the department that the application for the permit contains knowingly false or misleading information or that the permittee has violated any of the provisions of this chapter unless such permittee shall, before the expiration of said 30 days, correct such false or misleading information and comply with the provisions of this chapter... .
(2) Any person aggrieved by any action of the department in refusing to grant or in revoking a permit under s. 479.07 may, within the time provided by the Florida Appellate Rules after the date of such refusal or revocation apply to the circuit court for declaratory judgment as to the validity of said order of revocation as provided by chapter 86.
[9] The notice was entitled "Alleged Violation of Chapter 479 and Section 335.13 and 339.301, Florida Statutes and Notice to Show Cause." It contained a formal salutation ("GREETINGS") and a formal conclusion ("HEREIN FAIL NOT"). It declared that Mr. Walker was "hereby notified" that numerous of his signs, identified in attachments, were in violation of the specified statutes, on account of "NO VALID PERMIT TAGS." The notice stated: "Total 1976 Payment Due $182.00." Over the handwritten signature of the administrator of outdoor advertising, the notice stated in clearly legible print:

2. That unless the applicable provisions of said Chapter 479, Sections 335.13 and 339.301 Florida Statutes are complied with within thirty days from the receipt of this notice and written notice of compliance furnished to the Department of Transportation's Administrator of Outdoor Advertising, Haydon Burns Building, 605 Suwannee Street, Tallahassee, Florida 32304, or in the alternative, an administrative hearing under Section 120.57 Florida Statutes is requested by you within 14 days of receipt of this notice, then the above described violation(s) shall be considered to be true. In either case if you fail to reply within the 30 day period above then the Department of Transportation reserves the right to take such action as the law permits including by [sic] but not limited to the removal of the sign(s) in violation without further notice.
[10] Department rule 14-7.02 defines the term "license" as including any "authorization to engage in certain activity [or] to exercise a certain privilege... ."