PER CURIAM.
C.H. Barco Contracting Company (Barco) appeals the rejection of its bid for three road construction projects in Duval County. The Department of Transportation, by final order rendered June 26, 1985, rejected the bids submitted by Barco and awarded the subject contracts to the second low bidder. Barco seeks review of the Department’s determination that Barco’s bid was non-responsive because it failed to meet the Department’s minority participation goals or demonstrate that it made a good faith effort to meet those goals.
The Department advertised and accepted bid submissions for three road construction projects in Duval County, Florida. When the bids were opened December 5, 1984, Barco was the apparent low bidder on all three projects. However, as Barco did not meet the Department’s goal for participation by disadvantaged business enterprises (DBEs) pursuant to section 339.0805, Florida Statutes (1984 supp.), Barco was required to demonstrate that it had made a good faith effort to meet the contract goals. The Department set percentage goals for DBE participation in the respective projects as follows: Project 3510— 10%; Project 3511 — 12%; and Project 3512 — 15%. Barco’s bid submission proposed zero percent DBE participation in all three projects.[1] Of the four ranked bidders, the second and third low bidder met or exceeded the DBE goals on each of the three projects while the fourth low bidder *798 proposed DBE participation of 4.6%, 6.59% and 12.65%, for the respective projects. The Department issued a notice of intent to award contract to Wiley N. Jackson Company (Jackson), the second low bidder, and Barco timely filed a notice of protest pursuant to section 120.53(5), Fla.Stat. A section 120.57(1) hearing was held and the hearing officer entered a recommended order rejecting Barco’s protest and affirming the Department’s decision to award the contracts to Jackson. The Department entered a final order adopting the recommended order and this appeal ensued.
Florida Administrative Code Rule 14-78.-03(2)(b)(4) (1984 supp.) provides, in part:
For all contracts for which DBE and WBE contract goals have been established, each bidder shall meet or exceed or demonstrate that it could not meet, despite its good faith efforts, the contract goals set by the department.
The rule goes on to provide that failure to meet the DBE goals will result in the bid submission being deemed non-responsive and the bid being rejected. Id. Florida Administrative Code Rule 14-78.-03(2)(b)(4)(A)(iv), requires a contractor who fails to meet the DBE goal to provide the Department with information demonstrating its good faith efforts. Florida Administrative Code Rule 14-78.03(2)(b)(4)(B)(i-ix) (1984 supp.) sets forth nine non-exclusive criteria against which a contractor’s good faith efforts will be evaluated. These criteria include: whether the contractor solicited all DBEs doing the type of work the contractor seeks to perform; whether the contractor selected economically feasible portions of the work to be performed by the DBEs; whether the DBE goals were met by other bidders; whether the contractor assisted DBEs in obtaining necessary bonding, credit or insurance; whether the work subcontracted matches the capabilities of solicited DBEs; and whether the contractor has utilized DBEs or WBEs in the last six months on other contracts. Subparagraphs (v) and (viii), two of the nine criteria, provide in full:
(b) Whether the contractor submits all quotations received from DBEs or WBEs, and for those quotations not accepted in explanation of why the DBE or WBE will not be used during the course of the contract. Receipt of a lower quotation from a non-DBE or a non-WBE will not in itself excuse a contractor’s failure to meet contract goals; provided however, a contractor’s good faith efforts obligation does not require a contractor to accept a quotation from a DBE or a WBE which exceeds the lowest quotation received from any subcontractor by more than 1%.
(viii) Whether the contractor’s efforts were merely pro forma and given all relevant circumstances, could not reasonably be expected to produce sufficient DBE and WBE participation to meet the goals.
The rule also provides that the above list “is not intended to be exclusive or exhaustive and the department will ... also [look at] the quality, quantity and intensity of these efforts.” Id.
Barco contends the Department, prior to the December 5, 1984, letting had liberally interpreted these criteria in determining whether the contractor demonstrated a good faith effort. Beginning with the December 5, 1984, letting, argues Barco, the Department switched to a strict or literal interpretation of the criteria. Barco maintains that it would have been awarded the subject contracts had the Department not changed its interpretation. Barco argues the Department’s new interpretation amounts to an “incipient nonrule policy,” see McDonald v. Department of Banking and Finance, 346 So.2d 569, 580 (Fla. 1st DCA 1977), and, since the non-rule policy represents the reversal of a past policy which was widely known and relied on by affected parties, the agency bears a greater burden of proof in justifying this non-rule policy. See Walker v. State Department of Transportation, 366 So.2d 96 (Fla. 1st DCA 1979). Alternatively, Barco contends the Department, unilaterally and without prior notice, abrogated the so-called “one percent rule” (contained in Flor *799 ida Administrative Code Rule 14-78.-03(2)(b)(4)(B)(v)). Barco asserts it was entitled to rely on the Department’s previous interpretation of this criterion; it did rely on the Department’s previous interpretation of this criterion; and suffered detriment due to its change in position caused by relying on the Department’s previous interpretation. See State Department of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981).
We find unpersuasive Barco’s contention that, but for the Department’s decision to reinterpret the good faith efforts criteria in a more literal fashion, it had submitted evidence sufficient to demonstrate a good faith effort to comply with the DBE goals set by the Department. While there was some testimony indicating some members of the Department felt the interpretation of the good faith effort criteria was stricter than in the past, we find the criteria enunciated in the rule to be of such a nature that a case-by-case adjudication is clearly contemplated by the rule. Thus, the fact that the interpretation of the criteria as applied to the facts of the instant case may have varied from a previous interpretation is not dispositive. The interpretation of the good faith standard applied by the Department in this case is clearly a permissible one and is consistent with the clear and unambiguous language of the rule. As stated in McDonald v. Department of Banking and Finance, supra:
The Florida APA ... also recognizes the inevitability and desirability of refining incipient agency policy through adjudication of individual cases. There are quantitative limits to the detail of policy that can effectively be promulgated as rules_ 346 So.2d at 581. (emphasis supplied)
Barco relies heavily on the fact that the Department’s Good Faith Efforts Committee reversed its initial recommendation that Barco’s good faith efforts package be approved. Subsequent to the initial approval of Barco’s good faith effort package, the chairman of the Good Faith Efforts Committee attended a meeting with a senior policymaker and a member of the Awards Committee who indicated their disagreement with the Good Faith Efforts Committee’s decision to approve Barco’s good faith efforts package. The Good Faith Efforts Committee then requested or was directed, the testimony on this point is in conflict, to reconsider their decision and determined to recommend that the bid be deemed non-responsive for Barco’s failure to provide a good faith effort to meet the DBE goals. The Good Faith Efforts Committee is the first step in a four-tiered internal review mechanism through which a bid submission must pass before a contract is awarded. It was undisputed that each supervening level of the review mechanism was free to reject the recommendation of the Good Faith Efforts Committee. In light of this fact, the Good Faith Efforts Committee’s actions alone do not demonstrate the application of a non-rule policy, nor do they establish that the Department had previously applied the criteria in such a manner that that interpretation was widely known and relied on by contractors.
Barco also contends, in effect,[2] that it was entitled to rely exclusively on the so-called “one percent rule” (which we note, is not a rule, but merely one of the criteria contained within the rule) found in subparagraph v of the good faith criteria. That provision states that a contractor is not required to use a DBE quote that exceeds a non-DBE quote by more than one percent in order to be deemed in good faith. Barco argues they were entitled to rely on the fact that the Department “invariably” applied the one percent rule as a satisfactory reason for failing to use DBE quotes and that the department had previously allowed contractors to rely exclusively on the one percent rule to show a good faith effort. As proof of this Department “policy”, Barco states in its initial brief that it *800 “had on one other occasion submitted a bid in which it did not meet the DBE participation goal, yet Barco was awarded the contract based on the Department’s application of the one percent rule.” Once again, we find that the evidence adduced at hearing fails to support Barco’s argument. Barco’s president testified that in August, 1983, Barco’s bid submission failed to meet the DBE goal, yet it was awarded the contract through exclusive reliance on the one percent rule. We find this testimony to be rather perplexing as the one percent provision was not added to the rule until May 3, 1984. Even if the one percent rule had been utilized in approving Barco’s bid submission, it does not establish that Barco was entitled to rely exclusively on this provision. The August, 1983, letting set a DBE participation goal of 8%. Barco’s proposed DBE participation was 6.5%. We have no trouble distinguishing a case in which the contractor meets some 88% of the proposed DBE participation goal from a case in which the contractor proposes zero percent compliance with the DBE participation goal. Barco’s president also testified that the company was awarded a contract in August, 1984, but as Barco’s bid submission in that case met the DBE goals, Barco was not required to show that it had made a good faith effort and thus could not have relied on the one percent rule. The only testimony offered by Barco to support its allegation that exclusive reliance on the one percent rule was a practice widely known and relied on by Florida contractors was Barco’s president’s testimony that several DBEs who called with quotes the night before the letting, reminded him that he did not have to use the DBE quotes if the non-DBE’s quote was more than one percent lower. We do not find this evidence sufficient to establish Barco’s contention that reliance on the one percent rule was widespread among contractors doing business with the Department. In fact, it appears that some bidders utilized DBE quotes which were more than one percent over non-DBE quotes. This fact alone tends to refute Barco’s allegation that contractors knew they could rely solely on the one percent provision to satisfy the good faith efforts requirement.
We find the record adduced at the administrative hearing sufficiently supports the Department’s determination that Barco failed to show it exercised a good faith effort to meet the DBE goals. In so finding, we are mindful of this court’s role in reviewing an agency’s decision to award a contract. As the supreme court stated in Liberty County v. Baxter’s Asphalt and Concrete, 421 So.2d 505, 507 (Fla.1982):
In Florida ..., a public body has wide discretion in soliciting and accepting bids for public improvements and its decision, when based on an honest exercise of this discretion, will not be overturned by a court even if reasonable persons may disagree.
We find the Department has advanced competent substantial evidence to support its determination to reject Barco’s bid as non-responsive. Barco failed to solicit all certified DBEs performing the type work to be subcontracted. Testimony indicated that Barco solicited 27 certified DBEs out of some 250 in the Department’s directory. While not all DBEs are available to do all types of work in all locations, there was evidence that Barco’s effort was lacking, out of 33 certified DBEs available for concrete work, Barco solicited only 12. Barco obtained only a single quotation from a certified DBE through its solicitation efforts. Barco received at least three quotations from unsolicited DBEs. The necessity of requiring a contractor to solicit all DBEs, especially where the contractor seeks refuge in the one percent rule, is readily evident. Should a contractor be allowed to selectively solicit DBEs, he would be free to solicit only those which, due to geographical considerations or other factors, would produce quotes higher than the quotes of non-DBEs and the contractor would be able to avoid the Department’s DBE goal. Clearly, one provision should not be read so as to emasculate the entire rule. Furthermore, as has been previously noted, Barco was the only bidder who failed to include any DBE participation in *801 its bid submissions. Two bidders met the DBE goals on each of their respective bids, while a third proposed substantial compliance. There was also evidence which would tend to show that Barco’s efforts were merely pro forma and under the circumstances would not be expected to secure DBE participation to meet the goals.
The order of the Department rejecting Barco’s bid as non-responsive and awarding the subject contracts to Jackson is supported by competent substantial evidence, whereas Barco’s factual assertions are tenuous at best. Accordingly, the final order of the Department is affirmed.
MILLS and JOANOS, JJ., concur.
BOOTH, C.J., dissents.

. In Project 3510, the Department had set a goal of 3% Women Business Enterprise (WBE) participation. Barco exceeded this goal.

. Although Barco couches its argument in terms of incipient nonrule policy, unilateral abrogation and detrimental reliance, we think this statement correctly characterizes the gist of Bar-co’s argument.