BOOTH, Chief Judge,
dissenting.
We should reverse the order below, based on the findings of the hearing officer, adopted in the order sought to be reviewed. These findings, quoted and summarized in pertinent part below, are not challenged on this appeal:
I. THE AGENCY CHANGED ITS INTERPRETATION/POLICY OF THE RULE AFTER THE BIDS WERE SUBMITTED.
In this regard, the hearing officer’s findings, accepted by the agency, are as follows:
Beginning with the bid letting in December, 1984, related to the Barco matter, the Department of Transportation has decided that [1] solicitation would be in the form of certified mail, return receipt requested, or hand-delivery with appropriate receipt and that bidders would provide copies of the certified mail receipts or other receipts with the bid blank. The claim on the part of the bidder that the solicitations were made by certified mail, naming the persons who were solicited would not suffice even if those assertions could be proven by evidence submitted after the bid opening, which evidence tended to verify the claims as set forth in the summary letter. Moreover, the department decided, that contrary to its prior interpretation of its rules, [2] a substantial number of solicitations to available DBEs and WBEs listed in the department’s directory would not be sufficient. Beginning with the Barco situation it would be necessary to solicit all [emphasis theirs] available DBEs and WBEs, without regard for perceptions by the bidders on whether responses would be forthcoming from all [emphasis theirs] available DBEs and WBEs. [3] The department also determined that all quotations already received from DBEs or WBEs should be provided with the bid blank. A written summarization or itemization of those quotations would not be sufficient. [4] The department takes the point of view in its decision to reject the Barco bids that it would not allow Barco to rely exclusively on the 1% differential between the quotations, ... given what the department deemed to be unacceptable efforts in compliance with other review criteria as discussed. Finally, in the overview, the department rejected the Barco bids because of the impression that the efforts made by Barco at good faith compliance with DBE goals were not of the quality, quantity and intensity that was necessary, [emphasis added except where otherwise indicated]
Summarizing the foregoing findings of the hearing officer, the agency changed its interpretation/policy after the bids were submitted in the following particulars: (1) mailing verification requirements were changed to require proof be submitted at the time of the bid; (2) a “substantial number of solicitations” would not suffice under the new interpretation, but “all available DBEs and WBEs” would have to be solicited and proof furnished; (3) that, contrary to prior practice, all quotations received from DBEs or WBEs should be provided with the bid blank, a written summar-ization no longer being sufficient; (4) where (1), (2), and (3), supra, were not *802 complied with, the one-percent differential between non-DBEs and DBEs would no longer excuse a contractor from accepting a quotation from a DBE or a WBE, despite the provision of Rule 14-78.03.
II.BARCO WAS AWARDED A PREVIOUS CONTRACT BASED ON THE APPLICATION OF THE ONE-PERCENT CRITERION.
The hearing officer found as follows:
Barco on one other occasion had submitted a bid in which it did not meet the DBE participation goal, based upon the fact that the non-DBE quotes were more than one percent lower than the quotations from DBE subcontractors and had been awarded the contract on that occasion.
The hearing officer also found (quoted infra V.) that Barco relied on the one-percent criterion and did not submit its DBE quotes, although Barco had sufficient DBE quotes to comply with all the stated goals.
III. IN NOT SOLICITING ALL DBEs, BARCO EXERCISED “A BUSINESS JUDGMENT. BASED ON PRIOR EXPERIENCE WITH DBEs, THEIR LOCATION AND ANTICIPATED COST OF MOBILIZATION FOR DBEs.”
The initial review by the Good Faith Efforts Review Committee found Barco’s solicitation of 27 DBEs substantial. The hearing officer’s order is in accord.[1] There was no finding that this was pro forma compliance or bad faith. On the contrary, the testimony of Wynn was that the agency had not required 100 percent solicitation in the past.[2] The hearing officer accepted this testimony as shown by findings set out in I., supra.
IV. THE CHANGED VOTE ON BAR-CO’S BID WAS A RESULT OF THE CHANGED INTERPRETATION.
The hearing officer found that the Good Faith Efforts Review Committee changed its vote after “executive guidance” based on “de novo” interpretation of the rule,[3] *803 and concluded, in part, as follows:
What has occurred on this occasion is that the Department of Transportation de novo is required to interpret its duly promulgated rule_while the petitioner and others have been allowed to profit from a less strenuous interpretation of that rule in the past; a literal interpretation was always available to the Department, and that interpretation has been made in these conclusions of law.
The hearing officer’s order makes it plain that the Good Faith Efforts Review Committee’s change in its decision was not based on new or additional facts. The change in the vote was based on “executive guidance” setting out a new interpretation.
The record entirely supports the conclusion that, as a result of the change in the interpretation made after the bids were in, the agency’s decision on this bidding changed, and Barco’s bid was rejected.
Keith 0. Pitchford, Chairman, Good Faith Efforts Review Committee, in December, 1984, testified as to original adequacy of Barco bids “based on our perspective at that time” (transcript, pages 90-91) and further testified (transcript, page 92):
Q. As a result of your changing or interpretation of the Department’s DBE rules, you and the committee reversed the position on Barco’s good-faith efforts package and changed it from one of approval to disapproval.
A. That’s correct.
Y. BARCO HAD SUFFICIENT QUOTES TO COMPLY WITH THE DE NOVO INTERPRETATION OF THE AGENCY.
The hearing officer specifically found:
While Barco fails to specifically mention the fact, there is greater than a 1% differential between the DBE quotations and the non-DBE quotations which were used in the several bid submissions. The quotations by the non-DBEs were lower by more than 1%. In view of that circumstance, Barco felt that it was appropriate to use the non-DBEs quotations as envisioned by Rule 14-78.03(2)(b)4.b.v., Florida Administrative Code (1984). This perception by the Petitioner relates to that portion of the rule which says:
... a contractor’s good faith efforts obligation does not require a contractor to accept a quotation from a DBE or WBE which exceeds the lowest quotation received from any subcontractor by more than 1%.
Had Barco chosen not to avail itself of the opportunity set forth in that rule, it had received sufficient DBE quotes to comply with all of the goals set forth in the several projects, [emphasis added]
VI. BARCO’S BID ON THE JOBS IS ALMOST A MILLION DOLLARS ($962,083) LOWER THAN THE NEXT LOWEST BID.
The order and record below show that the public is being required to pay a million dollars more for these jobs and that the one-million-dollar excess is not due entirely, or even primarily, to the use of “disadvantaged” contractors. The differential represents excess amounts being paid to the general contractor and wow-disadvantaged subcontractors. Jackson’s bid represents an increase of more than 18 percent over *804 Barco’s bid. Paradoxically, the higher bidders were able, and indeed required, to use bids from DBEs simply because their bids were higher, thereby allowing the DBEs’ bids to come in within the one-percent range.
The order and record below show that the agency’s decision to change policy in “midstream” without prior notice has been wasteful of public funds and supports neither Section 337.11, Florida Statutes (work to be awarded to the lowest responsible bidder), nor Section 339.0805, Florida Statutes (regarding use of disadvantaged contractors). The order below, quoted infra, finds that Barco had sufficient available quotes from DBEs to comply with the de novo interpretation; and, had prior notice been given at the time of bidding, these quotes could have been used by Barco, achieving the results of both statutes and saving the public many thousands of dollars.
CONCLUSION
The practical interpretation by an agency of its enabling legislation is entitled to great persuasive force and efficacy. However, the findings of the hearing officer make it absolutely clear that here the agency sought to change its practical interpretation retroactively to affect bids already submitted and that the agency gave no prior notice or opportunity to comply with new procedures. A change in that practical interpretation without prior notice or opportunity for compliance should not affect the basic rights of appellant. In Walker v. Department of Transportation, 366 So.2d 96 (Fla. 1st DCA 1979), a similar attempt at retroactive change in policy/interpretation was stricken by this court. I recognize the- difficulty of correcting the results of the agency’s improper action now that the contract has been awarded and the work underway. Nonetheless, this court should not seem to condone unconscionable actions violating fundamental fairness, and I must dissent.

. The order below finds that Barco solicited, by timely and proper letter, 43 companies, 27 of which were certified DBEs, and eight of which were certified WBEs.

. Testimony of Sharon Wynn, DBE/WBE liaison officer, based on her involvement in good faith effort evaluation from 1980 through the Barco bidding in December, 1984, states in part as follows:
Q. [Attorney for Barco] Now the first meeting of the good-faith efforts review committee, what discussion was had with regard to the number of DBEs that were solicited by Barco who were on the Department's DBE directory or listed in the Department’s DBE directory? Was there any discussion of that?
[[Image here]]
A. As usual, we always have a problem with the number of — or we tend to have a problem with the number of DBE contacts that have been made.
[[Image here]]
A. 43 in comparison to a directory of 250 so to speak.
One, we break down the items that would have been available for work and see what the average would have been in terms of the solicitations made by the bidder. Consideration is given to those factors. Although they are not weighted, they are measured in terms of what he achieves in the way of bids. If he sends one letter and gets a response and gets a good response, then, of course, no one could lay him out for not calling the other 249.
Q. At any rate, when the committee met the first time to review the good-faith efforts package submitted by C.H. Barco Contracting Company, it concluded that the number of DBEs that it had solicited was satisfactory or adequate to meet whatever the good-faith standard was?
A. In comparison to what he received as bids, yes.
[[Image here]]
Q. When you were the person who was evaluating the good-faith efforts packages submitted by bidders who did not meet the DBE goals, you never applied a standard or a criteria that the good-faith efforts package was automatically found lacking, was to be disapproved if the bidder did not solicit every DBE listed in the Department’s DBE directory?
A. No, I didn’t.
Q. Have you ever known that criteria to be applied?
A. If it has, I just don’t recall.

.These findings are, in pertinent part, as follows:
The Good Faith Efforts Review Committee in its initial recommendation favoring the award of the contracts to Barco, was giving a liberal interpretation to the nine criteria for review of the good faith efforts at compliance with DBE *803 contract goals.... This recommendation was then forwarded to the Chairman of the Technical Review Committee_ Hilliard ... requested a meeting with members of the Good Faith Efforts Review Committee. That meeting took place and two of the three members of the Good Faith Efforts Review Committee were in attendance, to include the chairman, a Mr. Pitchford. In the course of this meeting, at which "executive guidance” was given to the Good Faith Efforts Review Committee attendees, Hilliard and Potts made known their desire to give a more stringent or literal interpretation to the underlying rules dealing with the question of good faith efforts at compliance with the DBE contract goals. Following this consultation, the Good Faith Efforts Review Committee met for a second time to consider the question of Barco’s good faith efforts at compliance with the DBE contract goals.
_ On this occasion Barco was recommended for rejection as to all three projects, based upon alleged failure to show good faith efforts at compliance with DBE goals.