360 So.2d 1116 (1978)
Edwin G. FRASER, Ralph Sands, George H. Weiss, Clifford C. Allen, W.T. Mann, Sr., Thomas G. Raulerson, Joseph E. Jones, J.P. Hall, Jr., Joseph C. Gill, R.R. Thomas, John E. Mathews, Jr., and Newton A. Colee, As Organizers of a Proposed Security Bank of Macclenny, Petitioners,
v.
Gerald A. LEWIS, As Comptroller, State of Florida, Division of Banking, Department of Banking and Finance, Respondent.
No. GG-329.
District Court of Appeal of Florida, First District.
July 10, 1978.
Rehearing Denied August 9, 1978.
John E. Mathews, Jr. and Julie H. Kuntz of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for petitioners.
Ryland Terry Rigsby and Franklin J. Wollett, Tallahassee, for respondent.
ERVIN, Judge.
Disappointed applicants for a bank charter petition for review. Conditional approval for their application was given by Comptroller Dickinson in October, 1974. In January, 1975, this conditional approval was revoked by Dickinson's successor, respondent *1117 Lewis, who found local conditions did not ensure reasonable promise of successful operation for the proposed bank and for the bank already established in the community. Petitioners then requested and were given a Section 120.57(1) evidentiary hearing. The hearing examiner entered findings of fact and conclusions of law recommending that the charter be issued. The Department, while generally accepting the recommended findings of fact, differed with the officer's conclusions and denied the application.
The proposed bank site is Macclenny in Baker County. The only existing bank in the county is the Citizens Bank of Macclenny, which in 1975 opened a new, modern banking facility. That bank has been conservative in making loans and has apparently caused a substantial number of Baker County residents to go outside the county to meet their banking needs. There was testimony at the hearing that a ratio of 60% of total deposits involved in loans is desirable. The existing bank's ratio was 37-40%. The existing bank has made a profit every year since its opening in 1924. Total deposits in 1976 were $14,096,000, an increase from 1975 of $373,000. The existing bank's rate of return on its total assets was 1.38% for 1974, decreasing to .42% as of June 30, 1976. Witnesses for the Department of Banking and Finance testified the existing bank was not producing adequate income for its total capitalization and this was due primarily to the basic overall economic factors.
The population of Baker County was estimated at between 14,000 and 16,000 people. The Northeast Florida State Hospital is the largest employer in the county, with about 1,000 full-time employees and a 1976 payroll of over $9,000,000. The Baker County unemployment rate through 1975 was just over 3%. The county economy shows a "normal, healthy growth pattern." The new Baker County federal credit union has experienced phenomenal growth and in 1976 had about $1,300,000 outstanding in loans. Its general manager opined the county was in need of a second commercial bank and that the credit union could support the existing bank as well as the proposed bank.
It is undisputed that the petitioners satisfy four of the six statutory criteria set by Section 659.03(2), which provides:
(2) The department shall approve or disapprove the application, in its discretion, but it shall not approve such application until, in its opinion:
(a) Public convenience and advantage will be promoted by the establishment of the proposed bank or trust company.
(b) Local conditions assure reasonable promise of successful operation for the proposed bank or the principal office of the proposed trust company and those banks or trust companies already established in the community.
(c) The proposed capital structure is adequate.
(d) The proposed officers and directors have sufficient banking or trust experience, ability and standing to assure reasonable promise of successful operation.
(e) The name of the proposed bank or trust company is not so similar as to cause confusion with the name of an existing bank.
(f) Provision has been made for suitable banking house quarters in the area specified in the application.
There was no evidence challenging the banking experience, ability or standing of the proposed officers and directors. Nor was the name of the proposed bank found to be confusing. No evidence was introduced tending to show the proposed bank's facilities would not be suitable. Petitioners pledged $700,000 as capital. At the hearing, a Department witness testified a minimum capitalization of $1,000,000 is generally necessary for proposed banks. This was the first knowledge petitioners had of such a capitalization requirement. The hearing officer determined that only criterion (b) was in dispute. In his opinion, the normal, healthy growth pattern for the economy of Baker County assured a reasonable promise of successful operation of the proposed bank as well as the bank already established. He concluded the six requirements were met by petitioners and the Department *1118 thereby had authority to grant the application, conditioned upon petitioners' furnishing capitalization of $1,000,000.
Once again we are confronted, as we were in McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), with the difficult task of reconciling conflicting conclusions in the orders of the hearing officer and the reviewing agency. McDonald reminds us that the substantiality of evidence supporting the agency's substituted findings of fact depends upon a number of variables: 1. How far the factual issue tends to be one of opinion. 2. How completely agency policy occupies a field otherwise open to different opinion. 3. How far the ultimate facts are matters of opinion. If those opinions are infused by policy considerations for which the agency has special responsibility, the reviewing court will give less weight to the hearing officer's findings in determining the substantiality of evidence supporting the agency's substituted findings. McDonald v. Dept. of Banking and Finance, supra, at 579.
Our review of agency orders is limited by the provisions of Section 120.68, Florida Statutes (1977). Among those provisions we are required to "deal separately with disputed issues of agency procedure, interpretations of law, determinations of fact, or policy within the agency's exercise of delegated discretion." Section 120.68(7). We are also forbidden to substitute our judgment "for that of the agency on an issue of discretion." Section 120.68(12)(c). We are also instructed by McDonald that we should "allow the agency full statutory range for its putative expertise and specialized experience." Id. at 583. The Department's discretion in granting or denying applications for bank charters is of course not unbridled. Its discretion is conditioned upon the criteria provided by Section 659.03(2). Cf. National Bank of Tampa v. Green, 175 So.2d 545 (Fla. 1st DCA 1965); Bay National Bank and Trust Co. v. Dickinson, 229 So.2d 302 (Fla. 1st DCA 1969). It is also subject to the procedure afforded substantially interested parties by Section 120.57 of the Administrative Procedure Act.
All the criteria provided by the statute must be met by the applicant, otherwise the application will be denied. The only criterion in substantial dispute[1] is 659.03(2)(b), requiring the applicants to present proof that "[l]ocal conditions assure reasonable promise of successful operation for the proposed bank... ." In determining whether that test has been met, we stated in McDonald that such resolution "is less one of fact than of opinion which is highly charged with policy considerations for which the Department is responsible, [and] the hearing officer's discarded findings of fact have comparatively little weight in our determination whether substantial competent evidence supports the Department's substituted findings." McDonald at 584. Nevertheless, even when policy considerations are involved, and the agency has displaced the hearing officer's recommended conclusions because of such considerations, it is the agency's duty, mandated by Section 120.57, to explicate its policy and address countervailing arguments developed in the record as well as those urged by the hearing officer's recommended order. McDonald at 583. To this end it is our responsibility to determine whether the agency sufficiently explicated its policy reasons supporting the decision to deny petitioner's application for a bank charter.
The Department filed a detailed 12 page order extensively setting forth its reasons why the application should be denied. The primary reasons center on the following factors:
1. Growth. From June, 1975 to June, 1976, deposits at the existing bank only increased $373,000. The county was experiencing a growth in population, large in percentage *1119 figures but relatively small in actual numbers. Commercial growth since 1973 accounted for new employment of only several hundred people. Consequently it was the Department's opinion that the promise of attracting new deposits of sufficient numbers and amounts would be more difficult than in a larger urban area. Alternatively, it considered that if a new bank were chartered, the withdrawal of deposits and savings from existing commercial institutions in the locality might occur, an eventuality hardly conducive to the existing financial community's continued stability, required by the criterion in Section 659.03(2)(b).
2. Return. The existing bank's return on total assets in June, 1976, was only .42%, whereas in December, 1974, the return was 1.38%. The Comptroller noted a 1% return on total investments generally is considered a desirable industry goal. This low return was no doubt attributable to the tight economy then in existence. However, even by the petitioners' figures, the new bank would not operate at a profit until the third year. Losses would not be recouped for at least four years. Such a delayed recoupment schedule was not deemed promising.
We find the Department's order sufficiently "exposed and elucidated its reasons" for the discretionary action taken. McDonald at 584.
Petition for review is DENIED.
MILLS, Acting C.J., and SMITH, J., concur.
NOTES
[1] While the Department found criterion (c), relating to adequate capitalization, had not been met, its counsel conceded during argument before this court that if this were the only deficiency in petitioners' application, the Department would permit its amendment and, upon satisfactory proof that this condition had been observed, would no doubt issue the charter.