368 So.2d 411 (1979)
WHITE ADVERTISING INTERNATIONAL, Appellant,
v.
StATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. II-90.
District Court of Appeal of Florida, First District.
March 6, 1979.
William D. Rowland, Winter Park, for appellant.
Margaret-Ray Kemper, Alan E. DeSerio, H. Reynolds Sampson and Philip S. Bennett, Tallahassee, for appellee.
PER CURIAM.
This cause is REVERSED and REMANDED for further proceedings consistent with this Court's opinion in Walker v. State Department of Transportation, 366 So.2d 96, 1979.
MILLS, Acting C.J., and BOOTH, J., concur.
ERVIN, J., concurs in part and dissents in part.
ERVIN, Judge, concurring in part and dissenting in part.
On January 21, 1977, White applied to DOT for renewal of its sign permit and tendered delinquent fees for the years 1972-76. While the application was pending, on January 26, 1977, the Department adopted emergency rule 14ER77-09(3), giving notice to signowners throughout the state that it would no longer accept past due permit fees for advertising signs illegally *412 maintained without permits (now made permanent by rule 14-10.04(3), Fla. Admin. Code, effective April 21, 1977). On March 21, 1977, DOT sent White by certified mail a form notice advising that unless it complied with the provisions of Chapter 479 within 30 days from receipt of the notice, or in the alternative, it requested a § 120.57 hearing within 15 days from receipt, White would be required to show cause why its license should not be revoked. On April 5, 1977, DOT responded to White's request for renewal of its permit by declining the application and stating it would request a § 120.57 hearing. A hearing was held on April 27, and a recommended order entered reciting that White's sign had on it a permit tag dated 1971, that no application was made to renew the annual permit to display the sign until January, 1977, and that White had contended the sign should be permitted since DOT in the past had followed an unwritten rule allowing the renewal of permits upon tender of delinquent fees. The hearing examiner's order concluded that the failure of DOT to exercise its enforcement powers did not give White the right to violate the outdoor advertising requirements of the law and recommended the sign be removed. The recommendation was approved by DOT.
I agree with the majority that the Department should accept payment of the fees due and issue a current permit. I think, as stated by the concurring and dissenting opinion in Walker v. State of Florida, Department of Transportation, 366 So.2d 96, at p. 101 (Fla. 1st DCA, 1979), the controlling issue is whether the Department gave White notice and reasonable opportunity to renew sign permits on its existing sign. The only written notice which the record shows was forwarded to White was that dated March 21, 1977, after White's permit had expired. The Department, and the hearing examiner, apparently interpreted the notice as allowing White only the right to a § 120.57 hearing to show cause why the sign should not be removed. The record does not show that the notice required by § 479.07(3),[1] Fla. Stat. (1975), was ever forwarded to White during the years 1972-76. I concur with the majority solely on the ground it does not appear from the record that White was provided notice by DOT 60 days before expiration of its sign permit that it had 60 days from receipt of the notice in which to pay the fee.
I dissent, however, from that portion of the opinion which relies upon the majority's decision in Walker, holding that the Department may not, by formally adopted rule, change its prior questionable policy, never subjected to rulemaking, of accepting delinquent permit fees from signowners. The emergency rule was not in effect when White first submitted its fees and it is doubtful whether, from the language employed in the rule, it was intended to have retroactive application.[2] The effect of the majority's opinion goes beyond deciding questions of notice or retroactivity since, as stated in the Walker dissent, it freezes the agency's action to "cases now before the court, and others yet unborn, regardless of whether the ... notice sent those signowners was effective in the circumstances of those particular cases." Walker v. State, Dept. of Transportation, supra, at 102.
*413 The majority's decision, prohibiting the agency's right to adopt rules amending or abrogating prior policies or practices is, to say the least, an innovative approach to rulemaking, which has historically been considered an administrative  not a judicial  function. After the enactment of the 1974 APA, I had assumed that an agency had the power to amend or abrogate its prior policy by rulemaking. No attack was made by White on the constitutionality of any provision of Ch. 479, nor was any argument advanced that the rule was an invalid delegation of legislative authority, for which § 120.56 provides a remedy. The only argument White ever raised was that the deviation was invalid simply because it conflicted with DOT's former policy of accepting fees which were tardily proffered. Surely the agency's change of a prior practice by formal adoption of a rule cures that type of faceless, "invisible policy-making", condemned in Straughn v. O'Riordan, 338 So.2d 832, 834 n. 3 (Fla. 1976), which had not been exposed to the strictures of rulemaking. Under the circumstances, I fail to see any impediment to an agency changing its prior policy.
More importantly, even had there been no formal rule establishing a change in Department policy, I think, and absent any question of notice, the Department's later amended action would be justified. The APA does not in express terms invalidate actions effectuating policy statements of general applicability if they are not legitimated by rulemaking. Does it necessarily follow that all such statements which meet the APA definition of rule  but were not formally adopted  are invalid? For the reasons stated infra, I suggest it does not.
In the past, when an attack was made on agency action as invalid due to the agency's failure to comply with § 120.54, our approach quite often was to classify and, if the classification fell within § 120.52(14)'s definition, to invalidate.[3] Our approach in other cases was not to void the action taken if the incipient or emerging policy supporting the action was sufficiently explained for judicial review by final order.[4] In my opinion the above methods of judicial review are unsatisfactory because, by focusing attention upon the classification, they suggest that once the classification is determined, the judicial inquiry is ended. Therefore if the agency action attacked is, for example, one of general applicability not regularly adopted as a rule, it is for that sole reason invalidated. The classification of the action or statement as either rule or order is simply not the determinative factor for measuring its validity. Often the statement may involve elements of both adjudication and rulemaking.[5] While classifying the action may be an intermediate step leading to *414 the ultimate determination, the judicial inquiry should not cease if it is decided that the action, as classified, violates a specific provision of the APA. Once a violation is found, the next step is to decide whether the infraction is so material as to require judicial intervention. This additional inquiry is answered by the provisions of § 120.68, particularly 120.68(8), which sets out the standards for judicial review of all agency action. Thus the effect of a violation, caused by agency action, will depend upon whether the fairness of the proceeding or the correctness of the action is found to be impaired.[6]
Other provisions of § 120.68, requiring remand or reversal, should be measured by and read in pari materia with § 120.68(8). When we measure the effect of DOT's action, urged by White to be invalid, by the provisions of § 120.68, we find that the subsection most applicable is (12)(b), requiring remand if the exercise of discretion by the agency is "[i]nconsistent with ... a prior agency practice." Reading further, however, we find that remand is mandated only "if deviation therefrom is not explained by the agency; ... ." A § 120.57 hearing was provided White and an order complying with § 120.59 was regularly entered following the hearing. The hearing provided by § 120.57 "serves the public interest by providing a forum to expose, inform and challenge agency policy and discretion." State ex rel. Dept. of General Serv. v. Willis, 344 So.2d 580, 591 (Fla. 1st DCA 1977). It provides a mechanism both for rule challenges and for more varied complaints concerning agency action, including those against whom the agency has instituted adjudicatory proceedings, those whose substantial interests are threatened by agency causes or by agency action which is proceeding arbitrarily or otherwise. Id. While 120.54 proceedings are helpful in fostering a dialogue between the agency and the public as to the wisdom of the proposed action, it is questionable whether the dialogue in such proceedings has the same intensity as that provided by § 120.57 to identifiable parties.[7]
When a party's substantial interests are protected by a 120.57 hearing, and the agency's action is sufficiently explained for judicial review, I see little justification for a party's complaint that the action was not first subjected to rulemaking.[8] The party should instead be prepared to show on appeal how the action was impaired by either material error in procedure or a failure to follow prescribed procedure. If, for example, the non-adopted rule was outside the range of statutory delegation, it would have no more validity than a regularly adopted rule lacking the same authorization.
*415 There are many reasons why an agency which knows its policy should wisely cast it in rules  not the least of which is that if rules are not regularly adopted, the agency may be required to defend its policy decisions in each case. State, Dept. of Admin., etc., Person. v. Harvey, supra note 3. Whether or not rulemaking has taken place, the court, when reviewing an attack on an agency's action, should be aware of the policy supporting the action taken. If the discretionary action is clearly within the range of statutory delegation, the need for agency exposition is lessened, and I think the form of the statement is unimportant to a determination of validity. Here the agency explained, and the recommended order clearly stated, that DOT's former practice was in violation of Ch. 479's requirement that all outdoor advertising signs be removed which failed to display current permit tags. The order concluded by stating the failure of DOT to exercise its enforcement powers did not give White the right to violate the clear, unambiguous requirements of the law. The order, in my opinion, sufficiently explained the deviation for judicial review. Section 120.68(12)(b). Absent the fact of defective notice, I fail to find any impairment in the fairness of the proceedings or the correctness of the action taken by the agency's departure from its prior incorrect practice, and would otherwise affirm the order requiring removal of the sign.
NOTES
[1] Which provided that on or before November 1 of each year, DOT shall send to each permittee a notice of fees due on all permits. The permittee was given 60 days from receipt of notice to pay the fees due. Section 479.07(3) was amended by Ch. 78-138, effective June, 1978, and now requires the permittee be given two notices.
[2] A rule  like a statute  does not have prospective effect only. The test applied by the United States Supreme Court as to whether a retroactive change in an agency's practice should be sustained was to balance the effect of the change "against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." SEC v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2003 (1947). Professor Davis considers the Chenery decision sound since "[i]t is retroactive change in settled law, not retroactive clarification of uncertain law, that may be unfair, and the law or policy that the SEC was changing or developing was highly uncertain, not settled." 2 K. Davis, Administrative Law Treatise 544 (1958).
[3] Cases which have invalidated agency statements because they were not regularly adopted include Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977) (statement was a rule which expressly repealed the agency's declaratory statement); State, Dept. of Administration v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977) (agency guidelines for laying off employees were rules because they attempted to create certain rights and adversely affect others); State, Dept. of Admin., etc., Person. v. Harvey, 356 So.2d 323 (Fla. 1st DCA 1977) (minimum training and experience requirements were unpublished rules). Other agency actions were validated because their functions were not rules: Mitchell v. School Bd. of Leon Cty., 347 So.2d 805 (Fla. 1st DCA 1977) (staff reorganization plan which terminated a continuing contract position); Hill v. School Bd. of Leon County, 351 So.2d 732 (Fla. 1st DCA 1977) (discontinuation of practice which afforded county paid transportation on dangerous routes to school children); State, Dept. of Com., etc. v. Matthews Corp., 358 So.2d 256 (Fla. 1st DCA 1978) (wage rate determinations which applied only to a specific contract at a specific location).
[4] Cf. McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977); General Dev'pt Corp. v. Division of State, 353 So.2d 1199 (Fla. 1st DCA 1977); Fraser v. Lewis, 360 So.2d 1116 (Fla. 1st DCA 1978).
[5] Professor Davis' solution to deciding whether such borderline activities should be validated is "to avoid classifying them  to skip the labelling and to proceed directly to the problem at hand. Thus, if the problem is to determine appropriate procedure for a particular activity, the practical procedural needs may be studied without calling the activity either rulemaking or something else; ... ." 1 K. Davis, supra note 2 at 286.
[6] This standard was first intimated in Mitchell v. School Bd. of Leon Cty., supra note 3, where we stated that the agency's failure to file a proposed rule with DOAH at least 21 days before its intended action (then required by § 120.54(3), Fla. Stat. (Supp. 1974), since repealed) "did not impair the `fairness of the proceedings or the correctness of the action.'" Id. at 807. (Footnotes omitted.) We have also applied § 120.68(8)'s standard when reviewing violations of § 120.59(1)(b), requiring that final orders be rendered in writing within 90 days after the recommended order is submitted to the agency for approval, G. & B. of Jacksonville, Inc. v. Dept. of Business Reg., 362 So.2d 951 (Fla. 1st DCA 1978), and when determining whether to assess fees against an agency, as permitted by § 120.57(1)(b)9, and in favor of the prevailing party. Jess Parrish Memorial Hospital v. PERC, 364 So.2d 777 (Fla. 1st DCA 1978).
[7] An article by Cohen and Rabin, Broker-Dealer Selling Practice Standards: The Importance of Administrative Adjudication in Their Development, 29 L. and Contemp.Prob. 691, 714 (1964), favors "the flexibility afforded by the case method because of the discretion it offers in terms of application of the principle announced in a particular case and the opportunity for further refinement or modification in later cases." And, while a formal rule is evaluated "in terms of the maximum possible scope of its language ..., a statement in an adjudicatory opinion is evaluated against the specific factual context. Id. at 716-17.
[8] There is authority placing the decision on whether to proceed "by general rule or by individual, ad hoc litigation ... [as lying] primarily in the informed discretion of the administrative agency." SEC v. Chenery Corp., supra note 2, 332 U.S. at 203, 67 S.Ct. at 1580, 91 L.Ed. at 2002.