BOOTH, Judge.
This cause is before us on appeal from a final order of the Department of Community Affairs (DCA), finding appellants in violation of a development order (DO). Appellants raise myriad issues, but we address: (1) whether the DCA erred in determining that the DO imposed a date on which development was required to be completed; (2) whether the DCA erred in holding appellant Killearn Properties, Inc. (Killearn) responsible for abating violations of the DO by subsequent developers; and (3) whether the DCA should be estopped from enforcing the devel *773 opment order against appellants Kinhega Landing and Kinhega Oaks.
On November 14, 1974, appellant Killearn filed with the Leon County Commission an application for development approval (ADA) of a development of regional impact (DRI).[1] The ADA was prepared using a standard form distributed by DCA’s predecessor agency, the Division of State Planning. The form was part of a draft operating manual prepared by the Division as an aid to local governments and regional planning agencies in carrying out their roles under chapter 380. The manual recommended, but did not require, that local governments set specific dates in DOs on which development was required to be concluded, known as “buildout” dates. The manual also recommended, but did not require, that local governments specify circumstances under which the developers receiving DOs would be required to undergo further DRI review. The manual provided as examples of these circumstances, failure to meet any buildout date set forth in the DO, substantial deviation from the terms of the DO, and other factors as may be established by the local government.
Killearn, in preparing its ADA, tracked the form ADA and in response to certain questions therein, made references to a construction schedule of approximately ten years. Killearn, in the ADA, unequivocally represented that units within the development would be connected to a central sewer system as the development occurred. In response to a question as to what assurances the developer would provide that the sewer system would be completed, Killearn cited an agreement it had entered into with a rural electric cooperative for the provision of sewer service. The agreement required the prepayment of a substantial portion of the cost of providing the sewer service.
Leon County was required to provide notice of the ADA to the Division of State Planning and to the Northwest Florida Regional Planning and Advisory Council, and thereafter hold a public hearing on the ADA Prior to the public hearing, the Northwest Florida Regional Planning and Advisory Council issued its recommendation that Leon County approve the ADA, with certain conditions.
The Leon County Commission held a public hearing on the ADA on March 28, 1976. The minutes of the hearing reflect only that the ADA received “very much discussion.” The Commission entered a one-page DO in which it “approved the project as stated” and in which it rejected the recommendations of the Northwest Florida Regional Planning and Advisory Council.
The DO of March 23,1976, was not recorded in the public records of Leon County.[2] Between 1979 and 1981, Killearn sold certain tracts of land within the DRI to one Perry Bowdin under contracts for deed. J.T. Williams, Jr., chief executive officer and president of Killearn, testified that he informed Bowdin that the tracts of land were within the DRI. The contracts for deed were not presented at the hearing, and Mr. Bowdin did not testify at the hearing. Kill-earn recorded, in 1979, 1982, and 1987, certain restrictive covenants governing the use of tracts of land sold to Bowdin. These covenants permitted, but specifically did not require Killearn to install, sewers. The covenants also allowed the use of septic tanks in contravention of the DO.
Mr. Bowdin sold part of the property he had purchased to one James Jarrett of the Ocklocknee Management Company, who in turn sold the property to Southern Heritage Development, Inc., Boynton Realty, Inc., and Seay Enterprises, Inc. (Kinhega Landing). *774 The sale to Kinhega Landing was contingent on Mr. Jarrett obtaining approval of a plat for development from Leon County.
In November 1989, the Leon County Commission approved the plat for Kinhega Landing, imposing as a condition that units within the Kinhega Landing development would be required to hook up to a central sewer system if and when such system became available. Kinhega Landing purchased the land for $240,000, paid a $30,000 fee to Jarrett, and obtained a loan of $425,000 to develop the land. Kinhega Landing obtained permits for development from Leon County and the Florida Department of Environmental Regulation. Kinhega Landing began clearing the land and commenced construction of holding facilities for storm-water runoff.
At approximately the same time as the Kinhega Landing purchase, Mr. Bowdin sold another part of the property to Steven Stou-tamire, Louis Hill, Sr., and Louis Hill, Jr. (Kinhega Oaks). In purchasing the property, Kinhega Oaks relied upon the plat issued by Leon County, which permitted the use of septic tanks on an interim basis. Kinhega Oaks paid approximately $100,000 for this property and expended approximately $40,-000 on improvements to the property.
The DCA filed its notice of violation against Killearn, Kinhega Landing, Kinhega Oaks, and Leon County in July 1990. The DCA took the position that the DO order imposed a ten-year buildout date and did not allow the use of septic tanks, even as an interim measure. The hearing officer (HO) found that the DO did not impose a ten-year buildout date. Killearn, in identifying 1985 as the project completion date in its ADA, was merely responding to form questions which were part of the draft operating manual for DRIs, which had been prepared by the Division of State Planning, DCA’s predecessor agency. Leon County had imposed no requirement that the ADA be prepared according to the form and, accordingly, had not made a “conscious decision” to impose the 1985 buildout date. Moreover, there was no evidence that the remainder of the draft operating manual, which recommended the imposition of a buildout date, had been made available to Killearn or the County. There was therefore no “implication” that the County was carrying forward the policy of the Division of State Planning that a buildout date be imposed. Finally, the ADA and DO did not clearly inform Killearn of the imposition of the buildout date.
The HO also found that the DO unequivocally required the provision of a sewage treatment system so that units would be connected to that system contemporaneously with their development. The DO did not allow the alternative use of septic tanks on an interim basis. There was no requirement by terms of the DO or by law that the DO be recorded in the public records. The HO found Killearn was not required by the terms of the order to advise subsequent developers of parcels within the DRI area of the need to provide sewer service in accordance with the DO. The HO further found that the circumstances of the transfers of the parcels of land to Kinhega Landing and Kinhega Oaks were “troubling” but that it would be incorrect to impose an obligation on Killearn to provide sewer service to these developments. Finally, the HO found that DCA was estopped by the actions of Leon County, in approving the interim use of septic tanks by Kinhega Landing and Kinhega Oaks, from enforcing against these developers the sewer requirement. The HO alternatively found that Kinhega Landing and Kinhega Oaks were bona fide purchasers for value without notice of the sewer requirement.
The HO recommended entry of a final order requiring in pertinent part that Kill-earn record the DO and any amendments in the Public Records of Leon County, Florida, and provide written notice to all subsequent buyers of land within the DRI of the DO and the terms of the agreement between itself and the electric cooperative for the provision of sewer service. The HO also recommended that the County be required to refrain from issuing any permits for development in the DRI area unless such development was served by a central sewer. Finally, the HO recommended that the notice of violation be dismissed as to Kinhega Landing and Kinhega Oaks.
In the final order, DCA rejected the HO’s conclusion that the DO contained no buildout date, as unsupported by CSE and predicated *775 on eiToneous conclusions of law. DCA held that the DO was a quasi-judicial decision, and as such, its operation and effect must be determined by construction by the terms of the DO and not by reference to extrinsic sources. The DO unambiguously imposed a buildout date of ten years. DCA affirmed the HO’s finding that the DO required the provision of sewer service contemporaneously with development and did not allow septic tanks as an interim measure. Finally, DCA rejected the HO’s finding that it was es-topped from enforcing the sewer requirement against Kinhega Landing and Kinhega Oaks, by the actions of Leon County.
The final order required in pertinent part that Killearn provide central sewer service to Kinhega Landing and Kinhega Oaks within one year, refrain from further development within the DRI until it has provided such sewer service, complete substantial deviation DRI review for failing to comply with the buildout date and for certain other actions, provide written notice to subsequent purchasers of land within the DRI of the development order and terms under which sewer service could be obtained from the electric cooperative; and that it record the DO and its amendments in the Public Records of Leon County. The final order required Kinhega Landing and Kinhega Oaks to provide central sewer service to all its residential dwelling units within one year, and to refrain from further development until it has obtained such sewer service. Leon County was to refrain from issuing any further development permits for any development within the DRI that is not served by a central sewer system and until Killearn has completed substantial deviation DRI review. Kill-earn, Kinhega Landing, Kinhega Oaks, and Leon County appealed from the final order, and we consolidated the cases.
We turn, then, to the first issue, whether the DO imposed on Killearn and its successors in interest a ten-year buildout date. If the DO contains a buildout date, such date must arise from the terms of the DO itself, because nothing in section 380.06, Florida Statutes (1975), under which the DO was entered, required a buildout date. Where the language of the DO is plain and unambiguous, there is no room for construction or interpretation, and the effect of the DO must be determined according to the literal meaning of the language therein. The DO must not be construed to contain omitted provisions. Boynton v. Canal Authority, 311 So.2d 412, 415 (Fla. 1st DCA 1975). The DO simply approved the ADA “as stated” in the ADA. Athough the ADA contains repeated references to Killearn’s estimate that construction within the DRI would be concluded within ten years, the ADA contains no provision which imposes on Killearn the obligation to conclude development within ten years. The DCA simply implied from the estimates in the ADA, a requirement that Killearn was required to have completed construction within ten years, on penalty of having to undergo substantial deviation review. We therefore reverse the DCA’s finding that the DO imposed a ten-year buildout date.[3]
As to the second issue, the HO found, the DCA agreed, and the parties, with the exception of Leon County, do not dispute that the DO imposed an unequivocal requirement that development within the DRI be contemporaneously connected to a central sewer system.[4] The HO’s other relevant findings were that the record was unsatisfactory as to the steps which Killearn took to inform its successors in interest of the sewer requirement, that neither Kinhega Landing nor Kinhega Oaks received notice of the sewer requirement and that Killearn recorded restrictive covenants governing the Kinhega Landing and Kinhega Oaks property which purported to allow the interim use of septic tanks.
*776 The DCA is authorized by section 380.11, Florida Statutes, to, inter alia, prevent, abate, or control conditions creating a violation of a DO. The DCA’s decision to hold Killearn responsible for the violations of the sewer requirement by Kinhega Landing and Kinhega Oaks, and rejection of the HO’s contrary recommendation involves application of DCA’s enforcement policies to the facts as determined by the HO. This appears to be a classic case of a decision by an agency infused with policy considerations for which the agency has special responsibility, and as such, the decision is entitled in this court to the special standard of review enunciated in cases such as Fraser v. Lewis, 360 So.2d 1116, 1118 (Fla. 1st DCA 1978), and McDonald v. Department of Banking and Finance, 346 So.2d 569, 579 (Fla. 1st DCA 1977) (where the ultimate facts are increasingly matters of opinion and opinions are increasingly infused by policy considerations for which the agency has special responsibility, a reviewing court will give correspondingly less weight to the hearing officer’s findings in determining the substantiality of evidence supporting the agency’s substituted findings). We therefore affirm as to the second issue.[5]
Finally, as to the third issue, the HO’s material findings were that Leon County, by statute, had primary responsibility for determining compliance with the DO and enforcing its terms. The County erroneously approved preliminary plats for Kinhega Landing and Kinhega Oaks which permitted the interim use of septic tanks in violation of the DO. Kinhega Landing and Kinhega Oaks relied on these plats in deciding to purchase parcels of land within the DRI, in expending substantial sums improving the land and in incurring substantial debts to finance such improvements. Had these developers known of the requirements of the DO and of the terms of Killearn’s agreement with the provider of the sewer service, the developers would not have purchased the land.
The DCA did not reject any of these findings of fact as unsupported by competent, substantial evidence. Rather, the DCA’s rejection of the estoppel defense was predicated on its holding that Kinhega Landing and Kinhega Oaks had the duty to ascertain the legal restrictions on the property which they purchased and, accordingly, were not justified in relying on the preliminary plats which permitted septic tanks as an interim measure. In each of the cases relied upon by the DCA, however, the purchaser of land was denied the benefit of estoppel from the enforcement of a covenant or zoning provision because the covenant or zoning provision could have been ascertained by reference to the published ordinances or public records. See, e.g., Crowell v. Monroe County, 578 So.2d 837 (Fla. 3d DCA 1991); Metropolitan Dade County v. Fountainebleau Gas and Wash, Inc., 570 So.2d 1006 (Fla. 3d DCA 1990); Namon v. Department of Environmental Regulation, 558 So.2d 504, 505 (Fla. 3d DCA 1990), review denied, 564 So.2d 1086 (Fla.1990); Steinberg v. Bay Terrace Apartment Hotel, Inc., 375 So.2d 1089 (Fla. 3d DCA 1979); City of Miami Beach v. Meiselman, 216 So.2d 774 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 533 (Fla.1969). The instant DO could not have been discovered by search of the public records or perusal of the applicable law.[6] In fact, a search of the public records would have revealed the covenants recorded by Killearn which purported to allow septic tanks. We therefore reverse as to the third issue.
The final order appealed from is affirmed in part, reversed in part, and remanded for proceedings consistent herewith.
BARFIELD and MINER, JJ., concur.

. Section 380.06(1), Florida Statutes (1973), provides:
"Development of regional impact," as used in this section, means any development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county.
Section 380.06(6), Florida Statutes, provides in pertinent part:
|T]he developer shall file an application for development approval with the appropriate local government having jurisdiction.

. Section 380.06, Florida Statutes, was amended by chapter 80-313, Laws of Florida, to require that DOs and amendments to DOs be recorded in the public records. The amendment was expressly made applicable only to DOs initially entered after July 1, 1980.

. The DCA alternatively held that Chapter 85-55, Laws of Florida (effective October 1, 1985), which amended section 380.06, Florida Statutes, to require local governments to impose in DRI DOs buildout dates, was remedial and therefore applicable to the instant DO. The DCA has stated in its answer brief that it does not rely on this holding for affirmance.

. Leon County contends, relying on the general rule that a court should construe a contract or statute in such a manner as to render the contract or statute valid, that because Leon County approved the Kinhega Landing and Kinhega Oaks preliminary plats which purport to allow the interim use of septic tanks, that this court must construe the DO to allow the interim use of septic tanks. We reject this contention as without merit.

. We do not decide whether the DCA’s decision would have been within the range of its discretion had Killearn not recorded the restrictive covenants purporting to allow the interim use of septic tanks.

. The DCA contends that Kinhega Landing and Kinhega Oaks had the duty to search the DCA's files to determine what restrictions were applicable. We find no basis for that requirement, particularly where, as here, the subsequent purchasers apparently had no basis for knowing that there was a DO applicable to the property. The HO found that Kinhega Landing and Kinhega Oaks first learned of the DO after they purchased the property.