LEWIS, J.,
dissenting.
I respectfully dissent and would affirm PERC’s Final Order. In doing so, I note at the outset that the issue on appeal is not whether an affirmance by this Court would be akin to rewarding appellee for what the majority terms “an unlawful act,” but rather whether PERC abused its discretion in not following the hearing officer’s recommendation and ordering appellee to return to the status quo with regard to the officers’ work schedules. See § 120.68(7)(e)3., Florida Statutes (2000). Discretion is abused when the action taken is arbitrary, fanciful, or unreasonable, or, in other words, when no reasonable person would take the view adopted by the lower tribunal. Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). If reasonable people could differ as to the propriety of the lower tribunal’s action, then the action is not unreasonable, and there can be no finding of an abuse of discretion. Id.
In resolving labor disputes and fashioning a remedy to rectify a violation of the law concerning labor relations in the public sector, PERC’s decisions are entitled to great deference by the courts due to its enlightened experience in such matters. Town of Pembroke Park v. Fla. State Lodge, Fraternal Order of Police, 501 So.2d 1294, 1297 (Fla. 4th DCA 1986). Although I, like the majority, do not condone appellee’s actions in this case, I recognize that it was PERC’s duty to not only consider the officers’ collective bargaining rights when fashioning a remedy, but also the consequences of its ordered remedy on the Florida Fish and Wildlife Conservation Commission’s (“FFWCC”) functioning. Section 447.503(6)(a), Florida Statutes (2000), provides:
If, upon consideration of the record in the case, the commission finds that an *80 unfair labor practice has been committed, it shall issue and cause to be served an order requiring the appropriate party or parties to cease and desist from the unfair labor practice and take such positive action, including reinstatement of employees with or without back pay, as will best implement the general policies expressed in this part.
(emphasis added). Section 447.201, Florida Statutes (2000), provides that it is the public policy of the state to “promote harmonious and cooperative relationships between government and its employees” and “to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government.” (emphasis added).
Following the merger of the former Game and Fresh Water Fish Commission (“GFWFC”) and the former Florida Marine Patrol (“FMP”) in July 1999 and the transfer of the two agencies’ responsibilities into the newly-created FFWCC, FFWCC formed the marine enforcement bureau and the inland enforcement bureau. The former GFWFC officers and the former FMP officers continued to work primarily in their area of specialty, either land or water enforcement. While these bureaus were intact, the officers also continued to work their previous schedules. The former GFWFC officers had previously worked a “best eight out of twenty-four hours” schedule. In other words, each officer chose which eight hours in a day to work based upon when he or she believed certain wildlife violations might be occurring. As to the marine patrol officers of the former FMP, each marine patrol chose the type of schedule that it operated upon. For instance, some districts would rotate schedules every twenty-eight days, while the officers in Dade and Broward Counties employed a seniority based schedule. According to PERC, prior to May 11, 2001, the day in which appellee implemented its new work schedule, there were thirteen different schedules being worked throughout the newly-created agency.
During the period between the merger of the two former agencies and appellee’s implementation of the new schedule, FFWCC evaluated its services and its effectiveness. For instance, upon the agency’s inquiry into its ability to respond to citizens’ complaints, which, according to its bureau chief, Michael Paul Wiwi, is the agency’s primary objective, FFWCC determined that on average, there was no officer available to respond to a citizen’s complaint seventeen percent of the time, with a high of thirty-four percent in some areas. As a result of its evaluation, FFWCC decided to merge the two former groups of officers into one. Also, during this period, FFWCC promoted officers throughout the agency and graduated its first class of officers, who had no previous work schedule.
On January 1, 2001, FFWCC’s reorganization plan went into effect. In reorganizing the agency, FFWCC established the east and west bureaus. However, according to PERC, the majority of the officers were not placed on the same squads under common supervision and with common duties until May 11, 2001, when the new schedule was implemented. This new schedule employs Alpha-Bravo-Charlie shifts with twelve-hour work periods. The Alpha shift is from 6:00 a.m. to 6:00 p.m., the Bravo shift is from 3:00 a.m. to 3:00 p.m., while the Charlie shift is a combination of both within the same week. Both the work periods and days off rotate every twenty-eight days for the lieutenants and the officers.
As the majority explains, appellant filed an unfair labor practice charge with PERC due to the agency’s implementation of the new schedule. However, appellant also *81 contended that appellee had engaged in an unfair labor practice in implementing the new work assignments whereby the officers were responsible not only for their previous area of specialty, either land or water enforcement, but also for the other area as well. In the hearing officer’s Recommended Order, she found that it was the legislative intent to integrate the former GFWFC and FMP into one agency, thereby eliminating duplication and creating a more efficient agency. According to the hearing officer, prior to the merger of these two agencies, officers in the same squad worked different hours than their supervisors. It was under this “multiple and inconsistent schedule structure” that FFWCC looked at its ability to respond to citizens’ complaints. The hearing officer found that under the new schedule, lieutenants are required to attempt to work the same shifts and take the same days off as all of his or her subordinates.
With regard to her conclusions of law, the hearing officer concluded that appel-lee’s unilateral change of its past work schedules without negotiating the change and its failure to provide appellant a reasonable opportunity to bargain over the impact of new work assignments constituted unfair labor practices. As such, the hearing officer recommended that PERC order the State to rescind the unilateral change in work schedules and return to the status quo ante until bargaining was complete. Interestingly, the hearing officer did not recommend that PERC order appellee to return to the status quo with regard to the new work assignments. The hearing officer only recommended that PERC order appellee to return to the bargaining table and negotiate over the officers’ new work assignments.
In appellant’s exceptions to the Recommended Order, it averred that the hearing officer should have gone further and required rescission of the work assignments as well. Appellant noted that the hearing officer may have recommended a status quo remedy only as to the work schedule because “the work assignments were so closely intertwined with the changed job schedules that a rescission of the change in work schedules necessarily entailed elimination of the change in job assignments.” Appellant conceded that the former GFWFC officers could not perform the duties previously performed by the former FMP officers unless both were assigned to the same work schedules.
While the majority correctly explains that PERC accepted the hearing officer’s conclusion of law that appellee committed an unfair labor practice in unilaterally changing the officers’ work schedules without first negotiating such, PERC disagreed with the hearing officer’s conclusion that appellee had committed such a practice with regard to its change in work assignments. Similar to appellant’s arguments in its exceptions, PERC recognized that the issues of work schedules and work assignments “are intertwined and difficult, if not impossible, to separate.”
In its Final Order, PERC set forth, “[hjaving found an unfair labor practice regarding the State’s implementation of the new work schedule, we would normally return the parties to the status quo ante.” While not condoning appellee’s violation of its statutory bargaining obligation, PERC recognized the disruptive effect a return to the status quo would produce in this case. According to PERC, requiring FFWCC to reinstate the thirteen prior work schedules would serve to dismantle the integrated schedules of supervisors and their subordinate officers and of officers within the same squads and would serve to increase the time for responding to citizens’ complaints. PERC further concluded that such results would be contrary to the legis *82 lative intent in proposing the constitutional amendment to merge the former GFWFC and the former FMP, which Floridians voted to approve. As such, PERC ordered appellee, upon appellant’s request, to return to the bargaining table and negotiate in good faith the officers’ schedules.
In reversing and remanding this case, the majority has, in effect, substituted what it believes to be the proper remedy for PERC’s chosen remedy merely because it believes that appellee ignored the officers’ right to bargain collectively. As the majority explains, “[t]he detrimental effect caused by unlawful action cannot be used as a shield to avoid imposition of the appropriate remedy.” (emphasis added). However, although the majority may disagree with PERC’s chosen remedy in the instant case, PERC’s decision is entitled to great deference by this Court due to its enlightened experience in such matters. See Town of Pembroke Park, 501 So.2d at 1297.
PERC, obviously realizing its statutorily mandated duties of implementing a positive action that best implements chapter 447’s general policies and taking into consideration the public policy of promoting the orderly and uninterrupted operations of government, decided that restoration of the status quo as to the officers’ work schedules was not warranted. To order the restoration of the status quo with regard to the work schedules would, in effect, force the agency to return to the status quo as to the employees’ work assignments as well. In other words, the agency would be forced to dismantle its integrated squads of officers, who now work under common supervision and with common duties, and revert back to its pri- or work structure where officers primarily worked in their area of expertise, either water or land enforcement. As such, I agree with PERC that a return to the status quo was not an appropriate remedy based upon the facts of this case.
Furthermore, although PERC’s traditional remedy in rectifying unfair labor practices in the work scheduling context has been to order the restoration of the status quo, there is no indication that thirteen different work schedules were involved in PERC’s previous decisions or that a return to those thirteen different work schedules would have an adverse effect on the employees’ new work assignments, as is the case here. See Int’l Brotherhood of Elec. Workers, Local Union 2358 v. Jacksonville Elec. Auth., 14 F.P.E.R. ¶ 19196 (1988) (ordering the Authority to restore a twelve-hour work shift); Laborers’ Int’l Union of North Am., Local Union No. 1240 v. Desoto County Board of County Comm’rs, 7 F.P.E.R. ¶ 12212 (1981) (ordering the Board to return the employees to their previous ten-hour day, four days a week).
In addition, although PERC has traditionally ordered the status quo in cases involving unilateral changes in employees’ work schedules, PERC is not bound to its traditional remedy in each and every ease that comes before it. Pursuant to section 120.68(7)(e)3., Florida Statutes (2000), a court must remand a case to the agency for further proceedings if the agency’s discretion was inconsistent with a prior agency practice if the agency does not explain the deviation. However, a court “shall not substitute its judgment for that of the agency on an issue of discretion.” § 120.68(7)(e), Fla. Stat. (2000). See also Thomas v. Dep’t of Juvenile Justice, 730 So.2d 809, 809 (Fla. 3d DCA 1999) (holding that the court could not substitute its judgment for that of the agency on an issue of discretion); Fraser v. Lewis, 360 So.2d 1116, 1118 (Fla. 1st DCA 1978) (noting that the court was forbidden to substitute its judgment for that of the agency on an *83 issue of discretion). Here, as previously set forth, PERC did explain its reasoning for deviating from its prior practice of ordering the status quo remedy. I find PERC’s reasoning sufficient for purposes of satisfying section 120.68(7)(e)3., and, therefore, unlike the majority, decline to substitute my judgment for that of PERC’s.
Moreover, while in no way condoning appellee’s actions, PERC recognized the disruptive effect that a return to the status quo would produce in this case. In choosing its remedy, PERC had to be mindful of the officers’ collective bargaining rights as well as assuring the “orderly and uninterrupted operations and functions of government.” See § 447.201, Fla. Stat. (2000). There is no question that ordering a return to the status quo with regard to the officers’ work schedules will have an adverse effect on FFWCC’s functions and operations, which will, in turn, be detrimental to the public interest. Because the majority recognizes that a return to the status quo may have such a detrimental effect, it has concluded that the parties shall have sixty days from the issuance of this Court’s mandate to negotiate a settlement. If a settlement is not reached, the appellee will be ordered to return the officers to their prior work schedules, notwithstanding the fact that the officers are now working on the same squads with their supervisors and the fact that new officers have graduated and others have been promoted. While the majority seems hopeful that a settlement will be reached within sixty days, there is no guarantee of such. Thus, FFWCC could still be placed in the extremely difficult position of having to dismantle its integrated squads of officers and revert back to its prior inefficient work structure, which would not only consume a great deal of the agency’s time, but also a significant amount of its resources.
In conclusion, I, like the majority, do not condone appellee’s actions in this case. However, I disagree with the majority’s reversal and remand because the factual scenario in this case is dramatically different from PERC’s past decisions. In declining to order the restoration of the status quo after concluding that appellee committed an unfair labor practice, PERC was cognizant of these differences and realized the potential detrimental consequences of such a decision. As such, PERC’s decision was not arbitrary, fanciful, or unreasonable. Therefore, I cannot agree with the majority that PERC abused its discretion. Accordingly, I would affirm.